In re Bennie **MUHAMMAD,** aka Bennie Johnson and Veronica Muhammad, aka Veronica Johnson, Debtors.

Leroy Young, Plaintiff,

v.

Bennie Muhammad, aka Bennie Johnson and Veronica Muhammad, aka Veronica Johnson, Defendants.

Bankruptcy No. 99–57651.
Adversary No. 00–4107.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Feb. 25, 2003.

Wendell N. Davis, Jr., Esq., Southfield, MI, for Plaintiff.

John Wesley Kline, Esq., Livonia, MI, for Defendants.

## DECISION and ORDER

BURTON PERLMAN, Bankruptcy Judge.

In this Chapter 7 bankruptcy case, debtors Bennie Muhammad and Veronica Muhammad are the named defendants. In his complaint, plaintiff asserts that he is a creditor of defendants and the debt owed him should be held nondischargeable. The complaint in the proceeding states that it is based upon 11 U.S.C. § 523(a)(2)(A), which Code provision is the basis for holding nondischargeable debts incurred through fraud. This court dismissed the complaint, and plaintiff was successful in an appeal of the order of dismissal. In his appeal from the order of dismissal, plaintiff also appealed from the order of this court denying a motion for summary judgment which plaintiff had filed. In his motion for summary judgment, plaintiff had sought to have collateral estoppel effect given to an order of the state court adopting the report of an arbitrator who had found in favor of plaintiff. This court had denied the motion for summary judgment. While the District Court reversed our dismissal of the complaint, it affirmed our denial of plaintiff's motion for summary judgment.

This court feels it necessary to make an observation which is at this point of historical interest only. At the time that the court dismissed plaintiff's complaint, the only basis for liability of which the court was aware was that stated in the complaint, § 523(a)(2)(A). In the decision by the district court on plaintiff's appeal, the court states that § 523(a)(6) was also before this court. That court says, at p. —— of its Order, that there was a Joint Pretrial Order "where plaintiff not only relied upon § 523(a)(2)(A), but § 523(a)(4), and (a)(6) as well." Plaintiff's Designation of Record on his appeal does not list a Joint Pretrial Order and no such document is listed in the docket of the proceeding. Nevertheless, in view of the holding by the district court on the appeal, this court accepts that § 523(a)(2), (4) and(6) can be a basis for liability here.

Before beginning our discussion, it is appropriate for us to quote the following from the decision of the district court:

The determination of whether or not a certain debt is dischargeable is a legal conclusion based upon the facts in the case. The bankruptcy court has the exclusive jurisdiction to make that legal conclusion. See, *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). The Supreme Court in *Brown* held that a bankruptcy court was not precluded by res judicata from considering extrinsic evidence on an issue which would have been litigated in the prior state court proceeding but was not. The Court reasoned that where the issues in state court were not identical to those in the bankruptcy proceeding, the parties

would have little incentive to litigate them. In this case, the Arbitrator was given only the issue of damages, but made no findings as to liability. The issues of intentional wrongdoing and fraudulent misrepresentation were not actually litigated, nor was their determination necessary to the task of determining damages. These were issues of fact, making the bankruptcy court's denial of plaintiff's motion for summary judgment appropriate. Therefore, the court AFFIRMS the bankruptcy court's denial of plaintiff's motion for summary judgment.

It is therefore for this court to determine issues of liability as well as damages.

We find the following facts. Defendant Veronica Muhammad (hereafter "Veronica") owned certain premises located at 17316 West Seven Mile Road in Detroit, Michigan. Her husband, defendant Bennie, had no ownership interest in those premises. In part of those premises Veronica conducted a dry cleaning business. Part of the building was rented to a business named Lighthouse Tape Source ("Lighthouse"). The Lighthouse occupied its premises as a month-to-month tenant. It did not have a lease. Plaintiff had a 35% interest in the Lighthouse business. The others with an interest in the business were Rasul Mohammed and Robert Williams, though the interest of Roger Williams was later taken over by Bernard Porter. The business of Lighthouse was the rental and sale of tapes of the speeches of Reverend Farrakhan. Rev. Farrakhan is the leader of a Muslim movement called Nation of Islam. Plaintiff, his co-proprietors in the Lighthouse, and defendants are all members of Muhammad's Mosque No. 1 (hereafter "the Mosque"), a mosque affiliated with the Nation of Islam. All of the parties were active in, and devoted to, the Mosque. Masters of the tapes of Rev. Farrakhan belonged to the Mosque. The

Lighthouse owned and sold copies of the master tapes.

Plaintiff has a regular occupation as a crane operator at Great Lakes Steel Company, the same company where defendant Bennie Muhammad works. Plaintiff was not the founder of the Lighthouse business. He became acquainted with it in 1994 when he bought his first video tape there, and found that tape to be of unacceptable quality. At that time the business was wholly owned by Rasul Muhammad and Robert Williams, and they were the original renters of the property from Veronica. Plaintiff acquired his interest in the business of the Lighthouse in February, 1995. Plaintiff and Robert Williams were the owners of the Lighthouse until early 1997 when Bernard Porter acquired the interest of Robert Williams.

As we noted above, all of the persons connected with this litigation belonged to the Mosque. It was their custom often to identify themselves by their first name, followed by the last name Muhammad. Thus, for example, Bernard Porter might be identified as Bernard Muhammad.

Veronica was hired by the Lighthouse as the manager of the Lighthouse by Rasul Muhammad and Robert Williams, the original proprietors. Veronica thus was the manager of the Lighthouse from before the time that plaintiff bought into the business. She did this while at the same time operating her dry cleaning business next door. The proprietors of the Lighthouse knew that Veronica operated her business at the same time that she managed the Lighthouse. Veronica was compensated for her services as manager by a commission on sales which occurred at the Lighthouse. Neither plaintiff nor any of the other proprietors of the Lighthouse business were involved in the day-to-day operation of that business.

The day-to-day business of the Lighthouse was conducted by, in addition to Veronica, employees Kim, who worked from 9:30 a.m. to 1:00 p.m., and Ali Brooks, who worked from 1:00 p.m. to 7:00 p.m. The most profitable months at the Lighthouse were February and March, and October and November. This was because in February and October, Rev. Farrakhan spoke to conventions, and this would stimulate considerable sales at the Lighthouse in those months and the succeeding months, March and November.

The rent for its premises from the beginning of plaintiff's involvement with the enterprise had been $750.00 per month, including utilities. The Lighthouse finally vacated the premises in October, 1997, when it was evicted for nonpayment of rent.

The central facts in the present litigation occurred in February and March, 1997. In mid-February, the proprietors of the Lighthouse, then plaintiff and Bernard Porter, and Veronica, had a conference where they told Veronica that her services as manager would be terminated as of the end of February. Veronica asked them to give her 30 or 60 days more before termination, but this plaintiff denied.

Immediately after her last day at the end of February, on March 2, 1997, Veronica had the locks on the premises of the Lighthouse changed. In addition, she informed plaintiff in writing that the rent would be thereafter increased. Plaintiff testified that the lockout lasted for 12 days. After eight or nine days, by mutual agreement of the Lighthouse proprietors and Veronica, there was a meeting at the Mosque. The Mosque decreed that Veronica give plaintiff keys to the new locks and that she should return the premises of the Lighthouse to the proprietors. Veronica complied with the decree. Thereafter, the Lighthouse was in possession of the premises until October, 1997, when it was evicted for nonpayment of rent.

## DISCUSSION

■ As we begin the application of the law to the facts which we have found, as an initial matter we conclude that the complaint must be dismissed as to defendant Bennie Muhammad. No basis for liability on his part can be found in the evidence, for none of the acts complained of were his. He had no interest in the property occupied by the Lighthouse and there is no evidence that he undertook any act to the prejudice of plaintiff or of the Lighthouse. The complaint is dismissed as to him.

■ There is also a dispositive question which must be considered with respect to the entire complaint. Plaintiff testified initially that the Lighthouse was a corporation, but then he said that the corporation did not exist. He testified that he had a 35% interest in the Lighthouse, but no documentary evidence of the existence of a corporation was presented. In his testimony, however, plaintiff referred to himself as a partner in the Lighthouse, as did his counsel frequently in questioning him. In early 1997, Bernard Porter became co-proprietor with plaintiff in the Lighthouse. Bernard Porter is not a party to this suit, nor is there any evidence that plaintiff is authorized to act on his behalf. It is the conclusion of the court that the business of the Lighthouse was conducted as a partnership between plaintiff and others. For that reason, the complaint must be dismissed. This court must look to the law of Michigan regarding the rights of a partnership in litigation. 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Michigan requires that before an action is brought by a partnership, the partnership must be registered by the state. *Birch Run Nursery v. Jemal,* 52 Mich.App. 23, 216 N.W.2d

488 (1974); *George Morris Cruises, et al. v. Irwin Yacht & Marine Corp.*, 191 Mich. App. 409, 414, 478 N.W.2d 693 (1991). In the absence of that registration, a partnership is disabled from maintaining a law suit. Here, the evidence is clear that the acts complained of by plaintiff by defendant Veronica were acts against the Lighthouse. It was the Lighthouse which occupied the premises here in question and it was the Lighthouse that conducted business at those premises. Whatever acts plaintiff claims were harmful were actions against the Lighthouse, not against plaintiff as an individual. For this reason, the entire complaint must be dismissed.

We will, nevertheless, discuss the grounds recognized by the District Court as being asserted by plaintiff in this proceeding. Plaintiff alleges liability pursuant to § 523(a)(2), (4), and (6).

■ 1. Section 523(a)(2)(A). The requirements for liability under this section are stated for the Sixth Circuit as follows:

> In order to except a debt from discharge under § 523(a)(2)(A), a creditor must prove the following elements: (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss. *See Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir. 1993). In order to except a debt from discharge, a creditor must prove each of these elements by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Further, exceptions to discharge are to be strictly construed against the creditor. *See Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988).

*Rembert v. AT & T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998).

■ Because the parties filed no briefs in this case, we looked to the Pretrial Order and closing arguments for what statement plaintiff asserted was a misrepresentation. There is no enlightenment to be found in the closing argument. From the Pretrial Order, it appears that plaintiff is contending that when Veronica told him that she was changing the locks as a security measure, this was a misrepresentation, for she was really doing it for the purpose of taking over his business. Veronica, however, testified that she changed the locks because the Lighthouse had not paid the rent. The evidence establishes, as will be developed more fully below, that indeed the February, 1997 rent had not been paid. We hold that any misrepresentation with regard to her reason for changing the locks on the premises was not material; what was significant was that the locks were changed. Nor was there any evidence that the statements made by Veronica at the time that the locks were changed were made with an intent to deceive plaintiff. There is simply no basis for a contention that the act of changing the locks on the premises and any statements made by Veronica at that time were acts of fraud.

Plaintiff's claim pursuant to § 523(a)(2)(A) is without merit.

2. Section 523(a)(4). This section of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–
>
> \*      \*      \*      \*      \*      \*

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

\* \* \* \* \* \*

It appears, only from the Pretrial Order, that plaintiff's basis for liability under this section is that defendant converted personal property and this constituted a larceny. A basic definition of larceny is:

The unlawful taking and carrying away of property of another with intent to appropriate it to use inconsistent with latter's rights.

BLACK'S LAW DICTIONARY 792 (5th ed.1979).

■ The Pretrial Order says, evidently as the basis for the claim of larceny, that Veronica took tapes and merchandise from the stock of the Lighthouse "selling them and keeping the money." The evidentiary basis for this claim is PX 3, several sales slips for sales made at the Lighthouse during the period after the locks were changed, but before the proprietors regained possession. Plaintiff testified that he did not receive the proceeds of the sales reflected in that exhibit. Veronica testified that she turned the proceeds of the sales reflected in PX 3 over to Brother Ali for him to put in the day's receipts for the Lighthouse. That testimony was unrebutted.

This court finds as facts that defendant did not take or convert any property of plaintiff, nor had she any intent to appropriate property of plaintiff.

We hold that plaintiff's claim pursuant to § 523(a)(4) is without merit.

■ 3. Section 523(a)(6). The Bankruptcy Code in this section provides:

(a) A discharge under section 727, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt–

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

\* \* \* \* \* \*

In *In re Markowitz*, 190 F.3d 455 (6th Cir.1999) the court had occasion to consider the elements necessary to make out liability under this provision of the Bankruptcy Code. The court found that its prior decision, *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987) was too broad a definition of "willful and malicious," because it held that the statute was offended when one intended an act, regardless of whether or not the consequences of the act were intended. The Sixth Circuit felt obliged to restrict the broad definition of the *Perkins* case because of a decision in the prior year by the U.S. Supreme Court, *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The Sixth Circuit in the *Markowitz* case arrived at the following test for liability (at p. 464):

... from the Court's language and analysis in *Geiger*, we now hold that unless "the actor desires to cause consequences of his act, or...believes that the consequences are substantially certain to result from it," Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a "willful and malicious injury" as defined under § 523(a)(6).

Thus, in order to prove liability under § 523(a)(6), plaintiff must prove that defendant intended to cause injury to plaintiff when she performed the acts of which plaintiff complains.

Those acts center around the fact that defendant changed the locks on the Lighthouse premises on March 2, 1997, and did not at that time give keys to the premises to plaintiff or the other proprietor of the

Lighthouse. Plaintiff contends that this was pursuant to a conspiracy to take over the business of the Lighthouse by Veronica. Plaintiff says that there was no basis for changing the locks on account of non-payment of rent, for the payment of rent was current. As further evidence to support his thesis, plaintiff points to a letter which is addressed to plaintiff and Bernard Muhammad. In the letter, plaintiff informs these proprietors of the Lighthouse that if they remain in occupancy the rent is going to be raised, and other charges will be levied as well. In a further letter to the same parties, Veronica then informed them that she was going to "re-open the Lighthouse," evidently without the participation of its then proprietors.

The court must evaluate these contentions in the light of the testimony and evidence presented at the trial. A first question with which we must deal is whether the Lighthouse rent for February, 1997 had been paid prior to the time that Veronica changed the locks. The court finds as a fact that it had not been. We hold Veronica's testimony to be credible on this point, while that of plaintiff is not, in view of the following evidence. It happens that some eight or nine days subsequent to the changing of the locks, the parties met at what was apparently a mediation session at their Mosque. As a result of that meeting, Veronica was obliged to give keys to the Lighthouse proprietors, and to allow the Lighthouse to remain in occupancy paying the same rent as it had theretofore. The Lighthouse remained in occupancy until October, 1997, at which point the Lighthouse was evicted from the premises by legal process for nonpayment of rent. The Lighthouse paid rent only in two months during the period February to October, 1997, and then payment was made only upon order of the court, and this was subsequent to February. A check by the Lighthouse, signed by both proprietors and dated August 27, 1997, for $1,500.00, intended as rent payment, was returned NSF. In addition, in an agreement reached under the auspices of their Mosque, and signed by Veronica and by Bernard (but not by plaintiff), the Lighthouse agreed to pay past-due rent for the month of February, 1997. We conclude then that the rent for February had not been paid. Veronica testified that her justification for changing the locks was that the rent had not been paid.

Though Veronica believed that her conduct in changing the locks was within her rights as a landlord, it was improper for her to take this action. Self-help for the eviction of a tenant is improper. M.C.L.A. 600.2918. The consequences of self-help, however, would be an award of damages, *Deroshia v. Union Terminal Piers,* 151 Mich.App. 715, 391 N.W.2d 458 (1986). Such damages would be dischargeable in bankruptcy unless the circumstances of the self-help met the test for willful and malicious injury under § 523(a)(6) which was formulated in *Markowitz* and *Geiger.*

The court has reached the conclusion that plaintiff has failed to establish liability with respect to Veronica pursuant to § 523(a)(6). The evidence establishes that the actions taken by Veronica in March, 1997, changing the locks, and sending a first letter regarding rent and a second letter announcing her intentions regarding the Lighthouse premises, were acts directed at the Lighthouse, not actions directed at plaintiff. There is no evidence that plaintiff is authorized to speak for the Lighthouse as an entity, and his co-proprietor Bernard Porter has not joined in this action. There is simply no evidence that Veronica took any action directed at plaintiff as an individual. If there was injury to an "entity" as required by § 523(a)(6), plaintiff was not that entity.

Furthermore, we hold that the evidence does not support plaintiff's contention that Veronica's acts were done for the purpose of injuring him. Instead, the evidence establishes that in taking the actions that she did, Veronica was motivated, not by an intent to injure the Lighthouse or either of its then proprietors, but rather because of her devout, intense, and fervent devotion to the Mosque and to the religion in which all participants in these events belonged.

Veronica believed that the Lighthouse was intended to function as a center for the dissemination to a larger public of the speeches and works of Rev. Farrakhan; that it was intended to be a ministry to enlighten the public about the faith of the Nation of Islam. The court is persuaded that it was missionary zeal regarding her faith that motivated Veronica in all of the actions that she took which have been discussed here. There came a time in February, 1997, when Veronica learned that neither of the original men who had begun the Lighthouse, Rasul or Robert Muhammad, would any longer be involved in the business of the Lighthouse. Instead, they would be entirely out of the business and would be replaced by plaintiff and Bernard Muhammad. She believed that this new arrangement was inconsistent with a continuation of the informality of the arrangements which she had with Rasul and Robert Muhammad, and with the effectiveness of the ministry of the Lighthouse. She put in writing what she was willing to do as landlord for the replacement proprietors. She also put in writing her intentions to satisfy her concern that there continue to be effective dissemination of the words of Rev. Farrakhan. In these writings, phrased in the observant language of the religion of the Mosque though peremptory and unilateral in tone, Veronica set forth her intentions regarding a continuation of the ministry of the Lighthouse. She abandoned these intentions within two weeks after they were stated, for the Mosque ordered her to do so, and ordered her to continue the existing arrangement with the then co-proprietors of the Lighthouse. The alacrity with which she abandoned her position testifies to Veronica's fervent devotion to her religion. It was her concern that the ministry of the Lighthouse be carried out in the best possible fashion which was her motivation in taking the actions that she did, not any desire to injure the Lighthouse or the plaintiff. Plaintiff has failed to prove that Veronica desired to cause injury to plaintiff, or that she believed that injury was "substantially certain to result from it."

It is the conclusion of the court that plaintiff has failed to establish the elements necessary for liability in a § 523(a)(6) action.

\* \* \* \* \* \*

In light of the foregoing, the complaint is dismissed.

So Ordered.