Margaret KAWAAUHAU,
et vir, Petitioners,

v.

Paul W. GEIGER.

No. 97–115.

Argued Jan. 21, 1998.

Decided March 3, 1998.

Norman W. Pressman, St. Louis, MO, for petitioners.

Laura K. Grandy, Belleville, IL, for respondent.

For U.S. Supreme Court briefs, see:
1997 WL 695469 (Pet.Brief)
1997 WL 769459 (Resp.Brief)
1997 WL 799985 (Reply.Brief)

Justice GINSBURG delivered the opinion of the Court.

Section 523(a)(6) of the Bankruptcy Code provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable. 11 U.S.C. § 523(a)(6). The question before us is whether a debt arising from a medical malpractice judgment, attributable to negligent or reckless conduct, falls within this statutory exception. We hold

that it does not and that the debt is dischargeable.

## I

In January 1983, petitioner Margaret Kawaauhau sought treatment from respondent Dr. Paul Geiger for a foot injury. Geiger examined Kawaauhau and admitted her to the hospital to attend to the risk of infection resulting from the injury. Although Geiger knew that intravenous penicillin would have been more effective, he prescribed oral penicillin, explaining in his testimony that he understood his patient wished to minimize the cost of her treatment.

Geiger then departed on a business trip, leaving Kawaauhau in the care of other physicians, who decided she should be transferred to an infectious disease specialist. When Geiger returned, he canceled the transfer and discontinued all antibiotics because he believed the infection had subsided. Kawaauhau's condition deteriorated over the next few days, requiring the amputation of her right leg below the knee.

Kawaauhau, joined by her husband Solomon, sued Geiger for malpractice. After a trial, the jury found Geiger liable and awarded the Kawaauhaus approximately $355,000 in damages.[1] Geiger, who carried no malpractice insurance,[2] moved to Missouri, where his wages were garnished by the Kawaauhaus. Geiger then petitioned for bankruptcy. The Kawaauhaus requested the Bankruptcy Court to hold the malpractice judgment nondischargeable on the ground that it was a debt "for willful and malicious injury" excepted from discharge by 11 U.S.C. § 523(a)(6). The Bankruptcy Court concluded that Geiger's treatment fell far below the appropriate standard of care and therefore ranked as "willful and malicious." Accordingly, the Bankruptcy Court held the debt nondischargeable. *In re Geiger,* 172 B.R. 916, 922–923 (Bkrtcy.Ct.E.D.Mo.1994). In

an unpublished order, the District Court affirmed. App. to Pet. for Cert. A–18 to A–22.

A three-judge panel of the Court of Appeals for the Eighth Circuit reversed, 93 F.3d 443 (1996), and a divided en banc court adhered to the panel's position, 113 F.3d 848 (1997) (en banc). Section 523(a)(6)'s exemption from discharge, the en banc court held, is confined to debts "based on what the law has for generations called an intentional tort." *Id.,* at 852. On this view, a debt for malpractice, because it is based on conduct that is negligent or reckless, rather than intentional, remains dischargeable.

The Eighth Circuit acknowledged that its interpretation of § 523(a)(6) diverged from previous holdings of the Sixth and Tenth Circuits. See *id.,* at 853 (citing *Perkins v. Scharffe,* 817 F.2d 392, 394(CA6), cert. denied, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987), and *In re Franklin,* 726 F.2d 606, 610 (C.A.10 1984)). We granted certiorari to resolve this conflict, 521 U.S. ——, 118 S.Ct. 31, 138 L.Ed.2d 1061 (1997), and now affirm the Eighth Circuit's judgment.

## II

Section 523(a)(6) of the Bankruptcy Code provides:

"(a) A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . . .

"(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

The Kawaauhaus urge that the malpractice award fits within this exception because Dr. Geiger intentionally rendered inadequate medical care to Margaret Kawaauhau that necessarily led to her injury. According to the Kawaauhaus, Geiger deliberately chose

---

1. The jury awarded Margaret Kawaauhau $203,-040 in special damages and $99,000 in general damages. *In re Geiger,* 172 B.R. 916, 919 (Bkrtcy.Ct.E.D. Mo.1994). In addition, the jury awarded Solomon Kawaauhau $18,000 in general damages for loss of consortium and $35,000 for emotional distress. *Ibid.*

2. Although the record is not clear on this point, it appears that Dr. Geiger was not required by state law to carry medical malpractice insurance. See Tr. of Oral Arg. 19.

less effective treatment because he wanted to cut costs, all the while knowing that he was providing substandard care. Such conduct, the Kawaauhaus assert, meets the "willful and malicious" specification of § 523(a)(6).

We confront this pivotal question concerning the scope of the "willful and malicious injury" exception: Does § 523(a)(6)'s compass cover acts, done intentionally,[3] that cause injury (as the Kawaauhaus urge), or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)? The words of the statute strongly support the Eighth Circuit's reading.

■■■ The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, *i.e.*, "reckless" or "negligent," to modify "injury." Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the *consequences* of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment *a*, p. 15 (1964) (emphasis added).

The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.*, neither desired nor in fact anticipated by the debtor. Every traffic accident stemming from an initial intentional act—for example, intentionally rotating the wheel of an automobile to make a left–hand turn without first checking oncoming traffic—could fit the description. See 113 F.3d, at 852. A "knowing

breach of contract" could also qualify. See *ibid.* A construction so broad would be incompatible with the "well-known" guide that exceptions to discharge "should be confined to those plainly expressed." *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915).

Furthermore, "we are hesitant to adopt an interpretation of a congressional enactment which renders superfluous another portion of that same law." *Mackey v. Lanier Collection Agency & Service, Inc.*, 486 U.S. 825, 837, 108 S.Ct. 2182, 2189, 100 L.Ed.2d 836 (1988). Reading § 523(a)(6) as the Kawaauhaus urge would obviate the need for § 523(a)(9), which specifically exempts debts "for death or personal injury caused by the debtor's operation of a motor vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance." 11 U.S.C. § 523(a)(9); see also 11 U.S.C. § 523(a)(12) (exempting debts for "malicious or reckless failure" to fulfill certain commitments owed to a federal depository institutions regulatory agency).[4]

The Kawaauhaus heavily rely on *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), which presented this question: Does an award of damages for "criminal conversation" survive bankruptcy under the 1898 Bankruptcy Act's exception from discharge for judgments in civil actions for " 'willful and malicious injuries to the person or property of another' "? *Id.*, at 481, 24 S.Ct., at 506. The *Tinker* Court held such an award a nondischargeable debt. The Kawaauhaus feature certain statements in the *Tinker* opinion, in particular: "[An] act is willful ... in the sense that it is intentional and voluntary" even if performed "without any particular malice," *id.*, at 485, 24 S.Ct., at 508; an act that "necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the [bankruptcy discharge] exception,"

---

**3.** The word "willful" is defined in Black's Law Dictionary as "voluntary" or "intentional." Black's Law Dictionary 1434 (5th ed.1979). Consistently, legislative reports note that the word "willful" in § 523(a)(6) means "deliberate or intentional." See S.Rep. No. 95–989, p. 79 (1978) U.S.Code Cong. & Admin.News pp. 5787,

5864; H.R.Rep. No. 95–595, p. 365 (1977) U.S.Code Cong. & Admin.News pp. 5963, 6320.

**4.** Sections 523(a)(9) and (12) were added to the Bankruptcy Code in 1984 and 1990 respectively. See Pub.L. No. 98–353, 98 Stat. 364 (1984) and Pub.L. No. 101–647, 104 Stat. 4865 (1990).

*id.,* at 487, 24 S.Ct., at 509. See also *id.,* at 487, 24 S.Ct., at 509 (the statute exempts from discharge liability for " 'a wrongful act, done intentionally, without just cause or excuse' ") (quoting from definition of malice in *Bromage v. Prosser,* 4 Barn. & Cress. 247, 107 Eng. Rep. 1051 (K.B.1825)).

The exposition in the *Tinker* opinion is less than crystalline. Counterbalancing the portions the Kawaauhaus emphasize, the *Tinker* Court repeatedly observed that the tort in question qualified in the common law as trespassory. Indeed, it ranked as "trespass *vi et armis.*" 193 U.S., at 482, 483, 24 S.Ct., at 507. Criminal conversation, the Court noted, was an action akin to a master's "action of trespass and assault ... for the battery of his servant," *id.,* at 482, 24 S.Ct., at 507. *Tinker* thus placed criminal conversation solidly within the traditional intentional tort category, and we so confine its holding. That decision, we clarify, provides no warrant for departure from the current statutory instruction that, to be nondischargeable, the judgment debt must be "for willful and malicious *injury.*"

Subsequent decisions of this Court are in accord with our construction. In *McIntyre v. Kavanaugh,* 242 U.S. 138, 37 S.Ct. 38, 61 L.Ed. 205 (1916), a broker "deprive[d] another of his property forever by deliberately disposing of it without semblance of authority." *Id.,* at 141, 37 S.Ct., at 39. The Court held that this act constituted an intentional injury to property of another, bringing it within the discharge exception. But in *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court explained that not every tort judgment for conversion is exempt from discharge. Negligent or reckless acts, the Court held, do not suffice to establish that a resulting injury is "wilful and malicious." See *id.,* at 332, 55 S.Ct., at 153.

Finally, the Kawaauhaus maintain that, as a policy matter, malpractice judgments should be excepted from discharge, at least when the debtor acted recklessly or carried no malpractice insurance. Congress, of course, may so decide. But unless and until Congress makes such a decision, we must follow the current direction § 523(a)(6) provides.

\* \* \*

We hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6). For the reasons stated, the judgment of the Court of Appeals for the Eighth Circuit is

Affirmed.