**In re Robert Milton VESTAL, Debtor.**

**Mamie L. Davis, Trustee, Plaintiff,**

**v.**

**Robert Milton Vestal, Defendant.**

**Bankruptcy No. 00–213–3F7.
Adversary No. 00–113.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Oct. 2, 2000.

Thomas Lobello, III, Rolfe & Lobello, Jacksonville, FL, for Plaintiff/Trustee.

Mamie L. Davis, Jacksonville, FL, Standing Chapter 13 Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JERRY A. FUNK, Bankruptcy Judge.

This Proceeding is before the Court on the Complaint Seeking Exception to Discharge filed by Mamie L. Davis, Standing Chapter 13 Trustee ("Plaintiff") on March 24, 2000 (Doc. 1). Plaintiff alleges that the debt of Robert Milton Vestal ("Defendant") to Plaintiff should be excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Defendant concedes that he owes money to Plaintiff as adjudged by the state court. However, Defendant argues that the debt did not arise from any willful or malicious acts on his part so as to justify exception from discharge under § 523(a)(6).

### FINDINGS OF FACT

Defendant, owner and manager of a now-defunct title loan operation, 14K Investments, Inc., received voucher check disbursements from Plaintiff on behalf of more than one Chapter 13 debtor going back at least four months before December 1997.

In December 1997, Plaintiff's staff mistakenly entered Defendant as a creditor entitled to disbursements from the Chapter 13 estate of Deborah J. Ahearn, Case No. 96–7838–3F3. The error caused Defendant's voucher checks to swell considerably.

The voucher checks listed the names of the estates from which Defendant was receiving payments.

Defendant did not file a claim or perform any other act with the intent of receiving payments from the Ahearn estate. Defendant received payments solely because Plaintiff's staff made a clerical error.

About four months later, the last Chapter 13 case for which Defendant was entitled to disbursements was closed. Defendant closed his title loan business at about the same time. Defendant did not thereaf-

ter adjust the balances of outstanding loans to reflect any payments received. Defendant did not thereafter check the books to ensure that he was entitled to the payments coming from Plaintiff. Defendant testified that he closed his business and stopped accounting because he was weary after one customer's particularly difficult bankruptcy case.

Defendant testified that some months the checks did not arrive or came in at a lower amount.

In May 1999, the proper creditor finally notified Plaintiff that it had not received disbursements in more than a year. By this time Defendant had received 13 payments out of the Ahearn estate, totaling $13,922.92.

Plaintiff paid the proper creditor the amount owed with funds from the general Chapter 13 trust account.

Subsequently, Plaintiff contacted Defendant, who conceded that he was not entitled to keep the money. Unfortunately, Defendant had thought himself entitled to the money as he received it and had spent it all accordingly. Plaintiff and Defendant agreed on a repayment schedule, but Defendant failed to make a single payment. Plaintiff then proceeded against Defendant in state court.

On October 12, 1999, the Duval County Court entered a default judgment in favor of Plaintiff in the amount of $13,838.86, which consisted of the $13,229.92 in accidental disbursements, interest of $608.94, and costs of $93.50.

On January 14, 2000, Defendant voluntarily filed a Chapter 7 petition.

Plaintiff contends that Defendant would have easily discovered that he was not entitled to the disbursements if he had checked the name of the estate on the voucher checks against his business records. Plaintiff alleges that this evidence gives rise to an inference that Defendant was aware of Plaintiff's error and knew that retaining and spending the money would injure Plaintiff.

Defendant asserts that he did not realize that he was not entitled to the checks until Plaintiff confronted him. Defendant claims that he did not initially notice the estate on the voucher checks at first because he received disbursements from several estates consolidated in the single voucher check. Defendant testified that he trusted that Plaintiff would not erroneously send him disbursements. Defendant claims that he remained in the dark as to Plaintiff's mistake for more than a year because the records of his moribund title loan business were disorganized and inaccessible.

## CONCLUSIONS OF LAW

Plaintiff contends that Defendant's debt to Plaintiff should be excepted from discharge under 11 U.S.C. § 523(a)(6). Section 523(a)(6) provides in relevant part:

(a) A discharge under section 727 … of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity …

11 U.S.C. § 523(a)(6) (2000).

In order for a particular debt to be excepted from discharge, a plaintiff must prove by a preponderance of the evidence that a debtor's actions fit within the exception. *See Grogan v. Garner,* 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge will be strictly construed in order to give effect to the "fresh start" policy of the Bankruptcy Code. *See Equitable Bank v. Miller (In re Miller),* 39 F.3d 301, 304 (11th Cir.1994).

In order for an act or omission of a debtor to qualify as "willful and malicious" under § 523(a)(6), a debtor must have intended not only the act or omission, but also the injury which resulted. *See Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Nondischargeability takes a deliberate or in-

tentional injury, not merely...a deliberate or intentional act that leads to injury." *Id.* Debts arising from reckless or negligent conduct do not fall under § 523(a)(6). *See id.* at 62, 118 S.Ct. 974.

■ There are two steps to the § 523(a)(6) inquiry in the Eleventh Circuit. First, the party objecting to discharge must show that a debtor acted or failed to act "willfully." Acts and omissions that are the result of accident or inadvertence are not considered "willful" for 523(a)(6) purposes. *See Hope v. Walker (In re Walker),* 48 F.3d 1161, 1163 (11th Cir. 1995). Second, the party objecting to discharge must show that a debtor's act or omission was substantially certain to cause injury. *See id.* Substantial certainty exists if a debtor knew and appreciated the substantial likelihood of injury to the party objecting to discharge. *See Smith v. Assevero (In re Assevero),* 185 B.R. 951, 956 (Bankr.N.D.Ga.1995).

## APPLICATION TO THE INSTANT CASE

■ The facts of this Proceeding do not support a finding that Defendant's negligence in not monitoring his old title loan accounts satisfies the *Geiger* "willful and malicious" standard. The Court is convinced that Defendant did not know that the voucher checks came from an estate from which he was not entitled to payments. Therefore, Defendants negligent omission (not inspecting his accounts) and negligent action (spending the money) could not have been undertaken with intent to injure Plaintiff. Because Defendant did not know that the disbursements were made in error, Defendant could not have known or appreciated the likelihood that spending the erroneous disbursements would injure Plaintiff.

This finding is in line with this Court's decision in *Anchor 7 Federal Credit Union v. Harris,* Adversary No. 97–317, Case No. 97–4645–BKC–3F7 (Bankr.M.D.Fla. November 30, 1998). In *Anchor 7,* the holder of a lien on debtor/defendant's car sought exception from discharge for a judgment in the amount of the lien. *See id.* at 3. The debtor had chosen to spend casualty insurance proceeds rather than pay a dealership that repaired the car after an accident. *See id.* The unsophisticated debtor did not know that the car could be auctioned and the creditor's lien extinguished. *See id.* The unpaid dealer attached a mechanic's lien and sold the car, leaving the creditor with the unsecured judgment claim. *See id.* This Court held that the debt should be discharged despite the fact that the debtor knew he was spending insurance proceeds meant to pay for the car's repair. *See id.* at 6. "While Harris [Debtor] did injure Anchor's [Creditor's] secured position with respect to the Contour [the car], the facts of this case simply do not support a finding that Harris deliberately or intentionally intended the injury he caused when spending the insurance proceeds." *Id.*

The instant situation is analogous. Defendant willfully retained and spent the money Plaintiff accidentally sent him. However, Defendant could not have intended to injure Plaintiff because, like the debtor in *Anchor 7,* Defendant was ignorant of some essential fact which prevented Defendant from foreseeing that injury could result to Plaintiff. Defendant did not know that he was not entitled to the disbursements.

Plaintiff failed to bring forward evidence sufficient to show that Defendant formed the requisite intent to injure Plaintiff. The evidence presented merely documented Defendant's inattentiveness. Defendant did nothing affirmative to begin receiving the payments or to keep them coming. Defendant did not file a false claim in order to receive disbursements. Defendant did not continue to accept and spend the money after learning of Plaintiff's mistake.

Plaintiff showed at most that Defendant carelessly overlooked Plaintiff's error. The Court is unwilling to except this debt

**330**

from discharge simply because Defendant may have negligently failed to rescue Plaintiff from her own mistake.

### CONCLUSION

For the foregoing reasons, the Court finds that Defendant did not "willfully and maliciously" injure Plaintiff. Therefore Defendant's debt to Plaintiff does not fall under the § 523(a)(6) exception to discharge. The debt will be discharged under 11 U.S.C. § 727 *et seq.*

The Court will enter a separate Judgment in accordance with these Findings of Fact and Conclusions of Law.