IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30554
Summary Calendar

_____

In the Matter of:
JOHN DAVID WESTMORELAND,

                                                      Debtor.

_____

GENE KOURY AUTO SALES, doing business as
West Central Auto Credit,

                                                      Appellant,

versus

JOHN DAVID WESTMORELAND,

                                                      Appellee.

_____

Appeal from the United States District Court
for the Western District of Louisiana, Lake Charles Division
(No. 01-CV-341)

_____

January 30, 2002
Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM:[*]

    Gene Koury Auto Sales ("Koury") seeks to prevent the discharge in bankruptcy of John David Westmoreland's car-loan debt.  Koury contends that when Westmoreland, lacking insurance, drove and negligently wrecked the car in which Koury had a security interest, Westmoreland acted willfully and maliciously, thereby making the debt nondischargeable under 11 U.S.C. § 523(a)(3).  The bankruptcy

_____

    [*]   Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

court held the debt to be dischargeable, and the district court agreed. We do too.

## I.

## FACTS AND PROCEEDINGS

The debt at issue is $2,548.09 in dealer financing for the 1986 Isuzu pickup truck that Westmoreland bought from Koury in September 1995 —— financing that Koury secured by perfecting an interest in the pickup. The sale contract required Westmoreland to insure the pickup, which he testified that he did for the first few months of his ownership. Thereafter, however, Westmoreland allowed his insurance to lapse, so that the pickup was uninsured on the day when, driving in Louisiana, from Lake Charles to Leesville, Westmoreland entered a construction zone, drove partway off the shoulderless road, went over a six-inch drop-off, and, in trying to return to the road, lost control of the pickup. It shot across the center line, struck an oncoming car, and burned.

After this accident, Westmoreland ceased making payments on the loan. Koury sued in state court, obtained a money judgment, and secured an order garnishing Westmoreland's wages. This order, and other sequellae of the accident, prompted Westmoreland to file for bankruptcy.

The bankruptcy court held that Westmoreland's debt to Koury was dischargeable. Koury appealed that decision to the district court, which affirmed. This appeal followed.

2

II.

ANALYSIS

We apply the same standard of review as the district court did, reviewing the bankruptcy court's factual findings for clear error and its legal conclusions and mixed determinations of law and fact <u>de novo</u>.[1]  The essential facts of the case are undisputed. The only issue is whether the debt was legally dischargeable.

Section 523(a)(6) provides that an individual debtor is not discharged from any debt "for willful and malicious injury by the debtor to another entity or the property of another entity." Conceding that Westmoreland's accident was neither willful nor malicious, Koury contends that for Westmoreland to drive without insurance was both.  In its brief to this court, Koury states that:

> [T]he pertinent and critical issues are whether the Debtor's wilful [sic] and intentional act of failing to maintain insurance coverage; wilfully [sic] and intentionally driving the vehicle without insurance coverage; wilfully [sic] and intentionally breaching his contract with Appellant; and willfully and intentionally violating state law.

Affirmative answers to these questions might foreclose discharge if the legal standard were what Koury's brief in part describes it to be — that the debt is nondischargeable if it results from an injury done either "without just cause or excuse" or "in knowing disregard of the rights of another."

_____

[1]<u>AT&T Universal Card Services v. Mercer</u> (In re <u>Mercer</u>), 246 F.3d 391, 402 (5th Cir. 2001) (en banc).

The current standard is different, however.  As the Supreme

Court unanimously determined in <u>Kawaauhau v. Geiger</u>,[2]

> The word "willful" in [§ 523](a)(6) modifies the word
> "injury," indicating that nondischargeability takes a
> deliberate or intentional <u>injury</u>, not merely a deliberate
> or intentional <u>act</u> that leads to injury.[3]

This means, the Court observed, that the category of injuries that

§ 523(a)(6) describes is somewhat analogous to "intentional torts,

as distinguished from negligent or reckless torts."[4]   The

distinction is that an intentional tortfeasor intends the

"<u>consequences of an act, not simply the act itself</u>."[5]   A broader

interpretation of the exception to discharge, the Court warned,

> could place within the excepted category a wide range of
> situations in which an act is intentional, but injury is
> unintended, <u>i.e.</u>, neither desired nor in fact anticipated
> by the debtor.  Every traffic accident stemming from an
> intentional act——for example, intentionally rotating the
> wheel of an automobile to make a left-hand turn without
> first checking oncoming traffic——could fit the
> description.  A knowing breach of contract could also
> qualify . . . .  A construction so broad would be
> incompatible with the well-known guide that exceptions to
> discharge should be confined to those plainly expressed.
>     Furthermore, we are hesitant to adopt an
> interpretation of a congressional enactment which renders
> superfluous another portion of that same law.  Reading
> § 523(a)(6) [to include injury resulting from negligence]
> would obviate the need for § 523(a)(9), which
> specifically exempts debts "for death or personal injury
> caused by the debtor's operation of a motor vehicle if
> such operation was unlawful because the debtor was

---

[2]<u>Kawaauhau v. Geiger</u>, 523 U.S. 57 (1998).

[3]<u>Id.</u> at 61 (emphasis added).

[4]<u>Id.</u>

[5]<u>Id.</u> at 61-62 (emphasis original) (citation and quotation
marks omitted).

intoxicated from using alcohol, a drug, or another substance."[6]
The Court therefore held that a debt arising from injury resulting from medical malpractice by an <u>uninsured</u> doctor did not fall within the compass of § 523(a)(6).[7]

The Court's discussion in <u>Kawaauhau</u> clearly rules out several of the theories that Koury advances. The Court teaches that even a knowing breach of contract, such as Koury alleges took place here, does not make a debt nondischargeable. And for us to interpret § 523(a)(6) as rendering nondischargeable every debt arising from the unlawful operation of a motor vehicle would read § 523(a)(9) out of the Bankruptcy Code. This we cannot and shall not do.

Our most recent gloss on <u>Kawaauhau</u> also disposes of Koury's argument that Westmoreland's driving the pickup without insurance was in and of itself "willful and malicious injury" under the statute. In <u>Miller v. J.D. Abrams, Inc.</u>,[8] we determined that, after <u>Kawaauhau</u>, "'willful and malicious injury' is a unitary concept entailing a single two-pronged test," and that an injury is willful and malicious when "there is either an objective

---

[6]<u>Kawaauhau</u>, 523 U.S. at 62 (citations and some quotation marks omitted).

[7]<u>Id.</u> at 64.

[8]<u>Miller v. J.D. Abrams, Inc.</u> (In re <u>Miller</u>), 156 F.3d 598 (1998).

substantial certainty of harm or a subjective motive to cause harm."[9]

That the intent prong describes the motivation to _injure_, not the motivation to act in a way that leads to injury, is clear from the unusual facts of _Delaney_[10] and our holding therein — which, as we said in _Miller_, "remains good law."[11]

> Delaney unquestionably acted intentionally when he loaded the shotgun, took it with him to the confrontation with Corley, and with his finder on the trigger, twice tapped the barrel of the gun on the windshield of the car to get Corley's attention. In contrast, however, the firing of the gun was neither deliberate nor intentional; on the contrary, it was wholly unintentional, even though possibly not wholly unforeseeable. It follows that, under our (and the majority of the circuits') reading of § 523(a)(6), Delaney did not intend Corley's _injury_—or any injury for that matter. Thus the injury was not "willful or malicious" on the part of Delaney: He neither intended the injury nor intentionally took action that was "substantially certain" to cause the injuries that Corley suffered.[12]

The "harm" element contemplated by the _Miller_ intent prong cannot be fulfilled simply by driving without insurance — even when the driver or owner is contractually bound to carry insurance — because, absent an accident, driving without insurance does not cause injury; to conflate the two would confuse causation with damage. "Harm" rather refers to the consequent injury itself — in this case, the destruction of Koury's security interest as a result of the accident.

---

[9] _Id._ at 606.

[10] _Corley v. Delaney_ (In re _Delaney_), 97 F.3d 800 (1996).

[11] _Miller_, 156 F.3d at 604.

[12] In re _Delaney_, 97 F.3d at 802–03 (emphasis original).

6

As there is no evidence in the record that Westmoreland had any subjective motive to destroy Koury's interest by totaling his own pickup, the issue reduces to whether driving without insurance created an "objective substantial certainty of harm." Again, Delaney controls. We held that Delaney's tapping a loaded gun against a car windshield was not "substantially certain" to cause injury to an occupant of the car, so neither could Westmoreland's failure to insure amount to such a substantial certainty. In this case's causal chain, Westmoreland's failure to maintain insurance is simply too distant from Koury's injury to create an objective, substantial certainty that harm would occur. Too many causal "links" intervene: the construction zone, the lack of a shoulder on the road, the six-inch dropoff, the loss of control of the vehicle, and the presence of an oncoming car. It is true that driving without insurance places a lender's interest in the car at risk, and that in some proportion of cases a subsequent accident will therefore result in financial injury to the lender. We are convinced, however, that such risk or proportion does not qualify here as an objective, substantial certainty.[13]

III.

---

[13]Our result here is therefore in accord with that reached by the district courts, which have largely held that the failure to insure a vehicle does not make a resulting debt nondischargeable under § 523(a)(6). See Broussard v. Fields (In re Fields), 203 B.R. 401, 411-12 (Bankr. M.D. La. 1996) (collecting cases).

7

## CONCLUSION

Westmoreland's failure to insure, followed by his driving the uninsured vehicle, did not create an objective, substantial certainty of harm; and Westmoreland had no subjective motive to cause harm. The bankruptcy court properly held, and the district court correctly affirmed, that Westmoreland's debt to Koury is dischargeable in bankruptcy. The judgment of the district court is, therefore,

AFFIRMED.