**In re Ronald L. DEORNELLAS, Debtor.**

**Timothy Pistorius and Peter Pistorius, Plaintiffs,**

**v.**

**Ronald L. Deornellas, Defendant.**

**Bankruptcy No. 02–71968.**
**Adversary No. 02–7146.**

United States Bankruptcy Court, C.D. Illinois.

June 10, 2003.

Darrel F. Parish, Decatur, IL, for plaintiff.

William A. Krajec, Springfield, IL, for debtor.

Edward T. Graham, Jr., Taylorville, IL, Steven L. Nelson, Rock Island, IL, for creditors.

## OPINION

LARRY LESSEN, Bankruptcy Judge.

This matter is before the Court on the Plaintiffs' Complaint to Determine Dischargeability of Debt and Defendant's Answer thereto. A trial was held on March 31, 2003.

Sometime in the later 1990s—the record isn't clear when and the date doesn't matter—Timothy J. Pistorius and his son Peter (collectively "Plaintiffs") entered into a year-to-year lease whereby they rented a farm with tillable acres and hog facilities near Blue Mound, Illinois, from James and Charlene Beckett. Plaintiffs decided to set up a hog operation on the rented farm and, in or about 1998, Plaintiffs, Ronald L. DeOrnellas ("Defendant"), and Richard L. Stiltz entered into a verbal agreement to form a partnership to own and run a hog operation. Defendant and Mr. Stiltz contributed some hogs; Plaintiffs bought additional hogs and equipment and the partnership known as Rosedale Pork Farm ("Rosedale" or "the partnership") was born. Plaintiffs were to own a 70% interest in the partnership; Mr. Stiltz and the Defendant were to each own a 15% interest. Robert DeOrnellas, Defendant's father, was hired as farm manager and came to live on site. Defendant later moved into the same house.

The partnership leased certain equipment (a farrowing house, a grinder/mixer, a vacuum tank, trailers) from Telemark for use in the hog operation. Plaintiffs sold corn to the partnership for use as feed for the hogs. The partnership utilized an

American Express credit card for making smaller purchases.

On August 1, 2000, the Becketts terminated the farm lease as of January 18, 2001. The Becketts expressed their dissatisfaction with the manner in which the lessees were handling manure disposal, pest control, and disposal of carcasses. The evidence at trial indicated that the herd was at this point affected with a deadly and insidious virus known as Porcine Reproductive and Respiratory Syndrome, or PRRS, and the testimony indicated that there was a consequent high mortality rate. Following receipt of notice of termination of the lease, the partners began looking to buy or lease another farm or facility for the hog operation, but were initially unsuccessful. The hogs remained on the Beckett property until the fall of 2001.

In March, 2001, Mr. Stiltz requested and received the partnership's financial records from the Plaintiffs. In April, 2001, Defendant and Mr. Stiltz stopped using the partnership checking account at the State Bank of Blue Mound and instead began depositing the partnership proceeds in Farmers State Bank & Trust of Jacksonville, Illinois. On July 23, 2001, Plaintiffs filed suit in state court against Defendant, Mr. Stiltz and Rosedale Pork Farm for damages and for an accounting.

In September, 2001, Robert DeOrnellas purchased a building site with hog barns near Lincoln, Illinois. In September and October, 2001, the livestock owned by the partnership were moved from the Beckett farm near Blue Mound to the Lincoln site by Defendant and his father. Defendant subsequently closed the account at Farmers State Bank & Trust in Jacksonville and opened an account at Illini Bank in Lincoln.

By this point, the PRRS virus was decimating the herd and things went from bad to worse. Defendant filed his voluntary petition in bankruptcy on May 6, 2002. Plaintiffs filed their adversary action on August 1, 2002.

The adversary complaint includes a number of factual allegations which Plaintiffs contend merit finding Defendant's debt to Plaintiffs nondischargeable. In fact, Plaintiffs' Complaint alleges facts which could give rise to causes of action under provisions of 11 U.S.C. § 523(a)(2)(A), § 523(a)(4), and § 523(a)(6). However, the Complaint only refers to Section 523 without designating any specific subsection. Defendant's pretrial statement refers only to 11 U.S.C. § 523(a)(4); Plaintiffs' pretrial statement refers only to 11 U.S.C. § 523(a)(4) and § 523(a)(6).

■ Section 523(a)(2)(A) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from any debt for money, property, or services to the extent obtained by false pretenses, a false representation, or actual fraud. 11 U.S.C. § 523(a)(2)(A). In order for a plaintiff to prevail under § 523(a)(2)(A), he or she must prove that (i) the debtor made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (ii) the debtor possessed the requisite *scienter*, i.e. he actually intended to deceive the plaintiff, and (iii) to his detriment, the plaintiff justifiably relied on the representations. *Field v. Mans*, 516 U.S. 59, 116 S.Ct. 437, 446, 133 L.Ed.2d 351 (1995); *In re Mayer*, 51 F.3d 670, 673 (7th Cir.1995), *cert. denied* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995); *In re Sheridan*, 57 F.3d 627, 635 (7th Cir.1995); *In re Scarlata*, 979 F.2d 521, 525 (7th Cir.1992). The plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279,

286–87, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Section 523(a)(4) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. In order for a plaintiff to prevail under § 523(a)(4), he must prove either (i) that the debtor committed fraud or defalcation while acting as a fiduciary, (ii) that the debtor is guilty of embezzlement, or (iii) that the debtor is guilty of larceny. Again, a plaintiff must prove the case by a preponderance of the evidence. *Id.*

■ Under § 523(a)(6), a discharge in bankruptcy does not discharge a debtor from a debt for "willful and malicious injury by a debtor to another entity or property of another entity." 11 U.S.C. § 523(a)(6). Under the Supreme Court's decision in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), in order for a debt to be nondischargeable under this provision, it must be a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Discussing the standard to be applied in cases involving conversion of collateral under § 523(a)(6) after *Kawaauhau,* the court in *In re Kidd,* 219 B.R. 278, 285 (Bankr.D.Mont.1998), stated:

> [A] creditor, in order to prevail under § 523(a)(6), must demonstrate by a preponderance of the evidence, that the debtor desired to cause the injury complained of, or that the debtor believes that the consequences were substantially certain to result from the debtors (sic) acts. In other words, in the case of a conversion, a creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so knowing, with substantial certainty, that

the creditor would be harmed by the conversion. This subjective test focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6).

Though the standard in these cases may have changed, it remains clear that each case must be determined on its unique facts. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Endicott,* 254 B.R. 471 (Bankr.D.Idaho 2000). Again, the plaintiff must prove each element by a preponderance of the evidence. *Grogan v. Garner, supra.*

■ First, Plaintiffs contend that the Defendant sold a feed grinder/mixer which was owned by Telemark and leased to Rosedale and that Defendant failed to apply the proceeds of the sale to the lease. Plaintiff contends that such sale constitutes actual fraud and also constitute embezzlement, larceny, and defalcation while acting as a fiduciary of Rosedale and its partners.

At trial, Defendant testified that he sold the grinder/mixer in 2001 for $1,500 and that the proceeds were deposited in the Illini Bank account and used to pay partnership expenses. Defendant also testified that he had the permission of Telemark representative Carla Mickey (sp?) to do so. Defendant's testimony was credible was unrebutted, and the burden of proof rests with the Plaintiffs. Accordingly, Defendant prevails on this point.

Plaintiffs next contend that, while in control of operations of Rosedale, Defendant failed to maintain sufficient records of the livestock owned by Rosedale and that he commingled the partnership livestock with that owned by Defendant personally so that it became impossible to determine which animals belonged to Rosedale, all in violation of his fiduciary duty to Rosedale.

Defendant testified that at all times the ownership of all of the hogs in his care was discernible by National Swine Registry ear notches; hence, the physical commingling of hogs caused no confusion and resulted in no actual commingling of partnership and personally-owned livestock. Again, Defendant's testimony was credible and unrebutted. Plaintiffs failed to meet their burden of proof. Accordingly, Defendant prevails on this point.

Plaintiffs next contend that Defendant reinstated a canceled American Express credit card formerly used by the partnership and continued to use the card without authority and incurred debts which he refused to pay.

Defendant concedes that he used the American Express card in September, 2001; however, he contends that the purchases were made on behalf of the partnership, i.e. to move the herd to Lincoln from Blue Mound. The documentary evidence indicates that the account was charged 22 times at gas stations between Blue Mound and Lincoln for a total of $702.48. Defendant denies any knowledge that the account was closed and he denies reinstating the card.

Contentions that Defendant reinstated a canceled card and that he changed the billing address on the account in order to conceal his ongoing fraudulent activity were simply not proven. It was also not shown that any charges to the account were for other than partnership purposes. The circumstantial evidence certainly supports the Defendant's position. Accordingly, Defendant prevails on this point.

Plaintiffs contend in their Complaint that Defendant sold or converted an Allis Chalmers tractor owned by Timothy Pistorius. No evidence or testimony was presented; hence, Defendant prevails on this point.

Plaintiffs further assert that Defendant sold animals belonging to Rosedale for cash and failed to deposit the proceeds; rather, he converted the proceeds to his own use. Again, there was no evidence or testimony presented on this point.

Plaintiffs next allege that, in April, 2001, Defendant and Mr. Stiltz abandoned the Rosedale checking account at State Bank of Blue Mound and thereafter deposited proceeds from sales of hogs into a joint personal account of their own use. Plaintiffs further assert that no financial information was subsequently provided to the Plaintiffs.

Defendant testified that he had no signing authority on the account at State Bank of Blue Mound. He also testified—and that testimony was unrebutted—that Timothy Pistorius wanted to close the account at State Bank of Blue Mound, whereupon Defendant opened the account at Farmers & Merchants State Bank of Jacksonville. Although the argument has been repeatedly proffered, there has been no evidence offered which indicates that partnership funds were used for personal purposes. Again, Defendant's testimony provided a plausible explanation for his actions in opening a new account, and Plaintiffs provided very little to rebut this explanation.

Finally, Plaintiffs contend that, from April 27, 2001, to October 10, 2001, Defendant withdrew funds in excess of $13,600 from the partnership account for his own use. Again, Plaintiffs failed to offer evidence at trial to support this contention. Accordingly, Defendant prevails on this issue.

During the trial, the Court heard a great deal from Plaintiffs about their dissatisfaction with how Defendant, his father, and Mr. Stiltz ran the business. Inexplicably, Plaintiffs—who were, after all, 70% owners—never seemed to be very interested in monitoring operations of Rosedale until it

became pretty clear that the venture was failing. Defendant, his father, and Mr. Stiltz may have been tending to the daily operations of Rosedale, but they were not "in control" of the partnership to the exclusion of Plaintiffs, as Plaintiffs have repeatedly suggested. Plaintiffs failed to exercise various statutory rights under the Uniform Partnership Act of the State of Illinois, 805 ILCS 205 *et seq.* Plaintiffs were never denied physical access to the premises, in Blue Mound or in Lincoln; Plaintiffs were always aware of where the hogs were. Plaintiffs never sought to remove the hogs from the Lincoln situs. By the time the hogs were moved to Lincoln, the herd was so infected with PRRS that the partnership venture was languishing. It is clear to the Court that the partnership's losses came about primarily as a result of the PRRS epidemic rather than from mismanagement or self-dealing on the part of Defendant. Plaintiffs' view appears be that it was Defendant's responsibility to protect Plaintiffs' investment and, because Defendant was more involved in daily operations than Plaintiffs, Plaintiffs could take no action to look out for their own investment in the venture and hold Defendant liable for losses because he was running the daily operation. That position is untenable.

For the reasons set forth above, the Court finds that Plaintiffs have failed to meet their burden of proof and that the debts subject to this adversary proceed are dischargeable in Defendant's bankruptcy. The Complaint is dismissed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

### ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that the debts subject to this adversary proceeding be and are hereby declared dischargeable in Defendant's bankruptcy proceeding.

IT IS FURTHER ORDERED that Plaintiffs' Complaint be and is hereby dismissed.