**In re Donald Henry AYALA, Debtor.**

**Lela May Rhodes, Plaintiff,**

v.

**Donald Henry Ayala, Defendant.**

Bankruptcy No. 04–21063.
Adversary No. 04–2058.

United States Bankruptcy Court,
D. Wyoming.

Sept. 8, 2005.

Ken McCartney, The Law Offices of Ken McCartney, P.C., Cheyenne, WY, for Debtor/Defendant.

Paul Hunter, Cheyenne, WY, for Plaintiff.

## OPINION ON COMPLAINT

PETER J. McNIFF, Bankruptcy Judge.

On July 13, 2005, the court held a trial on the Lela May Rhodes' (Rhodes) Complaint to Determine Dischargeability of Debt owed to her by the Debtor/Defendant, Donald Henry Ayala (Ayala). The court has considered the testimony and other evidence, the arguments of the par-

ties, and the applicable law, and makes the following ruling.

## Jurisdiction

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 & 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

## Findings of Fact

In 1993, Rhodes and Ayala entered into a relationship. They met in April 1993 and immediately Rhodes moved into Ayala's mobile home with him. The relationship apparently was based on convenience. Rhodes was nineteen years old and was searching for some stability in a troubled life. Ayala was older than Rhodes and had a controlling personality. Ayala, lacking reliable transportation, frequently used Rhodes' car to travel to work.

By July 1993, Ayala was contemplating a renewed relationship with his former girlfriend. On July 21, 1993, having become aware of Ayala's perceived duplicity, Rhodes intended to move out of Ayala's mobile home. With that end in mind, she went to the mobile home to pick up her car and possessions. Ayala was not at home, but two friends of his were lounging in the living room.

When Ayala returned from work to the mobile home, he and Rhodes ended up having an argument in the bathroom. Ayala left the bathroom and returned with a shortened stock, sawed-off shotgun which he claims he kept in his bedroom to protect himself from some unspecified, unsavory persons. The gun had a leather thong attached, and Ayala was swinging the gun around by this leather strip. Rhodes testified that Ayala was also loading and unloading the shells in the gun, and that she asked Ayala to give her the gun. One of the teenagers in the living room confirmed that Rhodes ask Ayala to give her the gun.

Rhodes was leaning against the sink with her left leg raised to her chest. Ayala was sitting on the tub. Rhodes testified that Ayala raised the gun with the leather strip, grabbed it and it discharged into her leg. Ayala began to yell, calling for his friends in the living room to call 911. At some point, a neighbor came to the trailer and apparently at his suggestion, Ayala held a towel on Rhodes' leg. Ayala did not leave the scene, and when the police arrived he was applying pressure to Rhodes' leg. Rhodes was hospitalized and suffered a very serious injury to her leg, the consequences of which continue today.

A police investigation ensued. At the scene of the shooting, Rhodes repeatedly advised the police officer that the shooting was an accident and nobody had meant to shoot anyone. Two days later she told a police detective the same thing, that the shooting was not intentional.

Ayala also contended the shooting was accidental. He claimed the gun discharged as he handed it to Rhodes.

Both parties changed their versions of the event over time. Ayala told Richard Lipka, the police detective, four different versions of the shooting, basically to conform his story to the forensic evidence. However, he never varied from his statement that he did not mean to shoot Rhodes. Lipka concluded the shooting was intentional because the gun had a functioning safety. According to Lipka, the only way the gun could discharge was if the shooter had a finger on the trigger.

On August 3, 1993, Rhodes told a police officer that Ayala would not pay for her medical expenses, and she wanted to press criminal charges because she intended to sue Ayala in a civil action. She contended that Ayala discharged the shotgun to scare her, and stated that she thought the shooting may have been intentional. At the

trial in this case, Rhodes stated that Ayala was a violent person who as recently as 2004 had told her the only accident was that he didn't shoot her in the head. In retrospect, Rhodes now believes the shooting was intentional.

At the trial, Ayala stated that he is not really sure what happened. He testified that he was "messing around" with the shotgun and when he handed the gun to Rhodes, it discharged.

Based on Lipka's Affidavit of Probable Cause, Ayala was charged with the criminal offense of reckless endangering. In the affidavit, Lipka stated that he believed Ayala was swinging the gun back and forth when it discharged. Ayala entered a plea of guilty to reckless endangering and was sentenced.

Rhodes filed a personal injury case against Ayala. On March 24, 1999, the Sixth Judicial District Court of Campbell County, Wyoming entered a default judgment for $937,844.23 against Ayala (Civil Judgment). The Civil Judgment contains findings that: "[t]he defendant ... willfully and intentionally caused injury to the plaintiff, Lela May Rhodes, by willfully and wrongfully shooting her and causing damages to her leg."

### Conclusions of Law

█ Rhodes contends the judgment debt is nondischargeable under § 523(a)(6) which provides:

> A discharge under section 727 ... does not discharge an individual debtor from any debt

> . . . .

> (6) for willful and malicious injury by the debtor to another entity or the property of another entity.

The creditor has the burden to prove, by a preponderance of the evidence, the elements of a § 523(a) claim. *Grogan v. Gar-*

*ner,* 498 U.S. 279, 111 S.Ct. 654, 658, 112 L.Ed.2d 755 (1991).

█ The United States Supreme Court addressed the willfulness element of a § 523(a)(6) claim in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 977, 140 L.Ed.2d 90 (1998). The Court ruled that the word "willful" requires proof of a deliberate or intentional injury, not merely a deliberate or intentional act which results in injury. *Id.* The standard is an objective standard, akin to that of an intentional tort. When an injury occurs due to recklessness, or is "neither desired nor in fact anticipated by the debtor," it is not within the scope of § 523(a)(6). *Id.* However, the Court did not define malicious conduct. Therefore, the element of malice requires application of Tenth Circuit law.

█ The Tenth Circuit Court of Appeals recently discussed the proof necessary to establish malice. *Panalis v. Moore (In re Moore),* 357 F.3d 1125, 1129 (10th Cir. 2004). A malicious act occurs when the debtor intends the resulting injury or takes action that is substantially certain to cause the injury. *Id.* The standard is a subjective one, focusing on the debtor's state of mind. *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1142 (9th Cir.2002).

█ Rhodes contends the findings in the Civil Judgment are entitled to preclusive effect, and therefore, the court cannot find that the shooting was accidental as Ayala claims. An accident is defined as an unintended and unforeseen injurious occurrence. *Blacks Law Dictionary* 15 (7th ed.1999). The court agrees that willful and intentional conduct, as stated in the Civil Judgment, is deliberate action that cannot be deemed accidental.

However, Ayala's deliberate conduct which resulted in the shotgun discharging does not establish malice. For three reasons, the court concludes Rhodes has not

met her burden of proof on the malice element of the claim.

First, both of the parties changed their stories over time and the court believes the renditions closest in time to the shooting are more credible than those twelve years later. Rhodes initially told the police the shooting was an accident. Ayala always contended that he did not intend to hurt anyone. Even when Rhodes told the police officer that she wanted to press criminal charges, she stated that she thought Ayala was trying to frighten her.

Second, Ayala was convicted of reckless endangering. Reckless endangering is a criminal offense, a misdemeanor for recklessly engaging in conduct that places another person in danger of death or serious bodily injury, or for knowingly pointing a firearm at another, whether or not the person believes the firearm is loaded. Wyo. Stat. Ann. § 6–2–504(a) (LexisNexis 2005). The Supreme Court made clear in Geiger that reckless conduct is not intentional conduct. *Geiger*, 118 S.Ct. at 977.

And last, Ayala's conduct after the shooting does not comport with a malicious injury. He did not leave the scene, or even the bathroom, but yelled for his friends to call for an ambulance. He stayed with Rhodes and tried to help her. The shooting appeared to be a surprise to him as well. That is the opposite of taking action that the debtor believes is substantially certain to cause injury. The court agrees with Rhodes that Ayala was trying to frighten her, not shoot her.

The claim under § 523(a)(6) fails. The court will issue a judgment for Ayala on the plaintiff's complaint.