# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

No. 12-6018

In re:

Marsha Steger;
Ray R. Steger,

    Debtors.

Montgomery Bank, N.A.,

    Plaintiff-Appellant,

v.

Marsha Steger,

    Defendant-Appellee.

Appeal from the United States
Bankruptcy Court for the
Eastern District of Missouri

Submitted: May 24, 2012
Filed: June 14, 2012

Before KRESSEL, Chief Judge, FEDERMAN, and NAIL, Bankruptcy Judges.

NAIL, Bankruptcy Judge.

Montgomery Bank, N.A. ("Bank") appeals the February 22, 2012 judgment of the bankruptcy court[1] dismissing Bank's complaint against Debtor Marsha Steger ("Debtor"). We affirm.

---

[1]The Honorable Barry S. Schermer, Chief Judge, United States Bankruptcy Court for the Eastern District of Missouri.

BACKGROUND

Debtor and James Clay Waller ("Waller") were the only members of Triple C Development, LLC ("Triple C"). Debtor handled the books; presumably, Waller handled everything else.

In February 2008, Triple C borrowed $140,000.00 from Bank to construct a duplex on a lot on Cape Rock Drive in Cape Girardeau, Missouri. In connection therewith, Triple C executed a construction loan agreement, a promissory note, and a deed of trust. Debtor personally guaranteed the loan. In February 2009, Debtor and her husband, Ray Steger, both guaranteed the loan.

Pursuant to the construction loan agreement, Triple C presented lien waivers, and Bank advanced the loan proceeds. In July 2009, after the loan was fully advanced, Bank discovered the proceeds had been used, not to construct the duplex on Cape Rock Drive, but to construct a different duplex on a different lot owned by Clay Waller and Jacque Waller.

In September 2009, Bank demanded payment of the $130,102.87 it was then owed. Triple C paid Bank $85,000.00 and entered into a change in terms agreement to pay Bank the remaining $45,102.87 plus interest, attorney's fees, and costs of collection by December 30, 2009. When Triple C failed to make the promised payment, Bank exercised its rights under the deed of trust and caused the lot on Cape Rock Drive to be sold. After the sale, Bank was still owed $39,559.98.

Debtor and her husband filed for relief under chapter 7 of the bankruptcy code in August 2011. Bank timely filed a complaint against Debtor and her husband to determine the dischargeability of its claim under 11 U.S.C. § 523(a)(2)(A), (4), and (6).[2] In its complaint, Bank alleged, *inter alia*, Debtor "made false and fraudulent representations to [Bank] . . . that the proceeds being advanced were for construction of a duplex on [Cape Rock Drive] . . . when the proceeds were in fact not used to construct a duplex on [Cape Rock Drive]."

---

[2]Bank voluntarily dismissed its complaint against Debtor's husband.

The matter was tried on February 14, 2012. At trial, Bank abandoned its claim under § 523(a)(4). After hearing the testimony of Bank's manager and Debtor and receiving a number of exhibits, the bankruptcy court ruled from the bench and memorialized its decision in a judgment dismissing Bank's complaint. Bank timely filed a notice of appeal.

## STANDARD OF REVIEW

We review for clear error the bankruptcy court's determination of whether the requisite elements of a claim of nondischargeability under § 523(a)(2)(A) have been satisfied. *R & R Ready Mix v. Freier* (*In re Freier*), 604 F.3d 583, 587 (8th Cir. 2010). We also review for clear error the bankruptcy court's determination of whether a debtor acted willfully and maliciously within the meaning of § 523(a)(6). *Waugh v. Eldridge* (*In re Waugh*), 95 F.3d 706, 710 (8th Cir. 1996). "A finding is clearly erroneous if, after reviewing the entire evidence, we are 'left with the definite and firm conviction that a mistake has been committed.'" *Freier*, 604 F.3d at 587 (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). "Oral findings and conclusions under [Fed.R.Civ.P.] 52(a) 'must be liberally construed and found to be in consonance with the judgment if the judgment has support in the record evidence.'" *Fonder v. United States*, 974 F.2d 996, 999-1000 (8th Cir. 1992) (quoting *Jiles v. Ingram*, 944 F.2d 409, 414 (8th Cir. 1991) (citations omitted)).[3]

## DISCUSSION

## 11 U.S.C. § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge a debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." To prevail under § 523(a)(2)(A), a creditor must prove each of the following elements by a preponderance of the evidence:

---

[3]Rule 52 applies in adversary proceedings. Fed.R.Bankr.P. 7052.

1. The debtor made a representation.

2. The debtor knew the representation was false at the time it was made.

3. The representation was deliberately made for the purpose of deceiving the creditor.

4. The creditor justifiably relied on the representation.

5. The creditor sustained the alleged loss as the proximate result of the representation having been made.

*Freier*, 604 F.3d at 587 (citations therein omitted).

The bankruptcy court found no evidence Debtor made a false statement to Bank prior to Bank's advancing the funds to Triple C. The record supports this finding. Bank's manager testified Debtor presented "some" of the lien waivers, but Bank did not identify them or offer them as exhibits, leaving the bankruptcy court with no rational basis for finding Debtor made any representation with respect to any particular lien waiver. Further, Debtor was not personally present–and thus could not have made any representation to Bank–on any of the occasions when Bank's manager inspected what he erroneously believed to be the duplex for which the loan proceeds were intended. Debtor also testified she did not learn the loan proceeds were being used to build a different duplex until sometime after the loan had been fully disbursed, and Bank's manager testified he had no firsthand knowledge that Debtor knew the loan proceeds were not being used for their intended purpose. Even if the record might also support a finding to the contrary–and we are not suggesting it does–the bankruptcy court's finding is not clearly erroneous. *Anderson,* 470 U.S. at 574 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.") (citations therein omitted).

Bank raises a number of arguments for the first time on appeal: that "[b]y failing to make some effort to repay the loan or otherwise remedy the situation, [Debtor] ratified the false representations she claimed she did not know were false at

the time";[4] that Waller's allegedly fraudulent conduct may be imputed to Debtor; and that Debtor's actions constituted a reckless disregard for the truth. Because Bank did not raise these issues before the bankruptcy court, we will not consider them on appeal.[5] *Edwards v. Edmondson* (*In re Edwards*), 446 B.R. 276, 279-80 (B.A.P. 8th Cir. 2011) (citations therein), *aff'd*, No. 11-2147, ___ Fed. Appx. ___, 2012 WL 1570850 (8th Cir. May 7, 2012).

## 11 U.S.C. § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]" Such a debt must be the result of an injury that is both a "willful injury" and a "malicious injury." *Blocker v. Patch* (*In re Patch*), 526 F.3d 1176, 1180 (8th Cir. 2008). A willful injury is one that results from the commission of an intentional tort. *Geiger v. Kawaauhau* (*In re Geiger*), 113 F.3d 848, 853 (8th Cir. 1997), *aff'd*, 523 U.S. 57 (1998). A malicious injury is one that results from conduct "targeted at the creditor . . . at least in the sense that the conduct is certain or almost certain to cause financial harm." *Barclays American/Business Credit, Inc. v. Long* (*In re Long*), 774 F.2d 875, 881 (8th Cir. 1985).

The bankruptcy court found there was no evidence of a tort, much less an intentional tort. Having reviewed the entire record, we cannot say the bankruptcy court's finding is clearly erroneous. Bank did not identify–and indeed has yet to identify–a tort on which its § 523(a)(6) claim might be predicated. Debtor simply

---

[4]Bank cited no authority in support of this rather curious proposition, which is in any event premised on a misstatement of the record. Once Waller's alleged fraud was discovered, Debtor in fact contributed $35,000.00 of her personal funds and signed a $50,000.00 note to evidence a loan that Waller negotiated with one of his other business associates to enable Triple C to repay $85,000.00 of the loan. Debtor also entered into the change in terms agreement to pay the remaining $45,102.87 Triple C owed to Bank.

[5]Bank's complaint is the only source for identifying Bank's arguments before the bankruptcy court: Bank did not file a pre-trial brief; it waived an opening statement; it did not offer a closing argument; and when given the opportunity to have the bankruptcy court consider additional findings of fact, its counsel stated, "I think those findings are fine, Your Honor."

failed to repay a debt in full.  Were that sufficient for a debt to be excepted from discharge under § 523(a)(6), it is unlikely any debt could ever be discharged in bankruptcy.

CONCLUSION

For the foregoing reasons, we affirm the bankruptcy court's judgment dismissing Montgomery Bank, N.A.'s complaint against Debtor Marsha Steger.

———————————————