In re Steven W. BENNETT and
Linda R. Bennett, Debtors.

Lincoln Land FS, Inc., Plaintiff,

v.

Steven W. Bennett and Linda
R. Bennett, Defendants.

Bankruptcy No. 02–73068.
Adversary No. 02–7180.

United States Bankruptcy Court,
C.D. Illinois.

June 10, 2003.

Duane D. Young, Springfield, IL, for Debtors.

Mariann Pogge, Springfield, IL, trustee.

**OPINION**

LARRY L. LESSEN, Bankruptcy Judge.

This matter is before the Court on the Plaintiff's Complaint to Determine Dischargeability of Debt filed September 12, 2002, and Defendants' Answer thereto filed on October 10, 2002. The issue is whether the indebtedness owed to Plaintiff by Defendants is nondischargeable pursuant to 11 U.S.C. § 523(a)(6). A trial was held on May 8, 2003.

For many years, Steven W. Bennett has been a farmer in Menard County, Illinois. Plaintiff and Mr. Bennett have had a long-standing and ongoing business relationship. Prior to 1995, Defendants maintained and utilized an open credit account with Plaintiff for the purchase of farm supplies to be utilized in Defendants' farming operation. In early 1995, Michael Stroup, Plaintiff's Finance Marketing Manager, explained to Mr. Bennett and others at a customer appreciation event that Plaintiff was offering a new agrifinance program in which customers with open accounts might wish to participate. Initially, Mr. Bennett balked because he had given, and told Mr. Stroup that he had given, his principal farm lender, First of America Bank (subsequently acquired by National City Bank), a lien on crops. Mr. Stroup assured Mr. Bennett that, under its new agrifinance program, Plaintiff sought only a second lien on Defendants' crops. Accordingly, Defendants applied for credit under the new agrifinance program and did so every year up through 1999 inclusive. Each year that they participated in the program, Defendants executed a Line of Credit Note and Security Agreement ("Agreement"), and each year, Mr. Bennett testified, he inquired about the lien he was giving to Plaintiff. Mr. Bennett received annual assurances that he was giving Plaintiff only a junior lien on crops and

that his primary lender's lien rights would be unaffected. The Agreement signed with Plaintiff prohibited Defendants from disposing of collateral anywhere other than Culver Fancy Prairie Co-op or Lincoln Land FS, Inc. without prior permission of Plaintiff. Mr. Bennett testified that he doubted that he ever read the Agreement and he was never told of any restriction about where he could or could not sell crops.

National City Bank extended line-of-credit loans to Defendants for the crop years 1997 and 1998. National City Bank believed that it was given, and Defendants believed that they had given to National City Bank, a first lien on crops. Defendants continued to believe this until notified by a representative of Plaintiff in October, 2000, that it claimed a lien paramount to that of National City Bank. During the time that Defendants believed National City Bank had a first lien on crops, Mr. Bennett, at various times, sold grain and delivered the proceeds of the grain to National City Bank. Until October, 2000, Plaintiff took no action against Defendants to enforce Plaintiff's lien. In October, 2000, a representative of Plaintiff delivered a copy of a letter dated September 15, 2000, to Mr. Bennett, who was then in the field. The letter notified Mr. Bennett that Plaintiff claimed a lien in and to Defendants' crops and that the crops must be delivered to specified locations. Subsequent thereto, Mr. Bennett delivered all crops to the elevators specified in the Agreement executed by the Defendants with the Plaintiff and in the letter dated September 15, 2000.

On July 19, 2002, Defendant filed their voluntary Chapter 7 petition in bankruptcy. Plaintiff filed its adversary complaint contesting the dischargeability of Defendants' debt to Plaintiff pursuant to Section 523(a)(6) of the Bankruptcy Code.

Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—
>
> > (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

11 U.S.C. § 523(a)(6).

■ In order to be entitled to a determination of nondischargeability under § 523(a)(6), a plaintiff must prove three elements by a preponderance of the evidence: (1) that the defendant caused an injury; (2) that the defendant's actions were willful, and (3) that the defendant's actions were malicious. *In re Carlson*, 224 B.R. 659, 662 (Bankr.N.D.Ill.1998) (citation omitted), *aff'd* 2000 WL 226706 (Bankr. N.D.Ill.1998), *aff'd* 2001 WL 1313652 (7th Cir.2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Under *Geiger*, to prove nondischargeability of a debt under § 523(a)(6), a plaintiff must show that the defendant actually intended to harm him and not merely that the defendant acted intentionally and he was thus harmed. *Id.* at 61–62, 118 S.Ct. 974. The defendant must have intended the consequences of his act. *Id.* Injuries either negligently or recklessly inflicted to not come within the scope of § 523(a)(6). *Id.* at 64, 118 S.Ct. 974.

■ The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Subsequent decisions, however, have required either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in *Geiger*. *See In re*

*Markowitz,* 190 F.3d 455 (6th Cir.1999); *In re Cox,* 243 B.R. 713, 719 (Bankr. N.D.Ill.2000); *In re Budig,* 240 B.R. 397 (D.Kan.1999); *In re Kidd,* 219 B.R. 278 (Bankr.D.Mont.1998).

■ To prove malice, a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse. *In re Slosberg,* 225 B.R. 9, 21 (Bankr.D.Me.1998). *See also In re Thirtyacre,* 36 F.3d 697, 700 (7th Cir.1994) ("Malicious" means "in conscious disregard of one's duties or without just cause or excuse".)

Discussing the standard to be applied in cases involving conversion of collateral under § 523(a)(6) after *Kawaauhau,* the court in *In re Kidd, supra,* stated:

> [A] creditor, in order to prevail under § 523(a)(6), must demonstrate by a preponderance of the evidence, that the debtor desired to cause the injury complained of, or that the debtor believes that the consequences were substantially certain to result from the debtors (sic) acts. In other words, in the case of a conversion, a creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so knowing, with substantial certainty, that the creditor would be harmed by the conversion. This subjective test focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6).

219 B.R. at 285.

■ Though the standard in these cases may have changed, it remains clear that each case must be determined on its unique facts. *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934); *In re Endicott,* 254 B.R. 471 (Bankr.D.Idaho 2000). "[T]he key in con-

version cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort or whether the conversion is the result of a negligent or reckless tort—but not wilful and malicious." *In re Kidd, supra,* 219 B.R. at 284.

■ In the case at bar, Plaintiff has presented a plausible case for breach of contract. The fact he failed to read or understand an Agreement which he signed and which limited the places to which he could deliver collateral might not save Mr. Bennett from a breach of contract action in state court. However, Plaintiff's case falls far, far short of proving a violation of 11 U.S.C. § 523(a)(6). Until October, 2000, Mr. Bennett thought National City Bank had a first lien on his crops, and he acted accordingly. Apparently, National City Bank and Plaintiff held the same misapprehension. Until October, 2000, Plaintiff never asserted its lien rights, and never sought to enforce the provision in the Agreements restricting where Defendants could dispose of collateral. After Plaintiff asserted its rights and sought to enforce the disposal of collateral restriction, Mr. Bennett complied fully. Nothing that Mr. Bennett has done was willful or malicious. Mr. Bennett never intended to harm Plaintiff or deprive Plaintiff of its property or rights in property. Mr. Bennett's actions are understandable, excusable, and his good faith is made manifest by his behavior after receiving Plaintiff's counsel's letter in October, 2000.

Mrs. Bennett's only involvement in this proceeding is based upon her signature on the Agreements. Mrs. Bennett did not participate in the farming operation and never delivered crops anywhere.

For the reasons set forth above, the Court finds the subject debt dischargeable in these proceedings.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

## ORDER

For the reasons set forth in an Opinion entered this day,

IT IS HEREBY ORDERED that Plaintiff's Complaint to Determine Dischargeability of Debt be and is hereby dismissed.