**In re Mark WOOD, Debtor.**

**Ross Johnson, Plaintiff,**

**v.**

**Mark Wood, Defendant.**

**Bankruptcy No. 02–90473.
Adversary No. 02–9035.**

United States Bankruptcy Court,
C.D. Illinois.

Dec. 22, 2003.

Ronald E. Boyer, Watseka, IL, for debtor.

## OPINION

GERALD D. FINES, Chief Judge.

This matter having come before the Court for trial on a Complaint to Determine Dischargeability; the Court, having heard sworn testimony and arguments of counsel and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

In his Answer to the Complaint to Determine Dischargeability, the Debtor admitted the following allegations of the Complaint:

1. At the time of filing of his bankruptcy proceeding the Debtor was indebted to Plaintiff upon a certain Promissory Note.

2. The Debtor's indebtedness to Plaintiff upon that Promissory Note was reduced to a judgment in the amount of $40,031.18, plus court costs by the Circuit Court of Iroquois County, Illinois, on August 23, 2001, in Case No.2001–LM–94.

3. MC Office Products, Inc. is a corporation of which the Debtor was President, Secretary, and a share holder and was listed as a co-borrower upon the Promissory Note forming the basis of the instant adversary proceeding.

4. At the time of the execution of Plaintiff's Note, the Debtor and the corporation operated businesses under the names "M. C. Office Products," "J. C. Penney's Franchise Store," and "Watseka Computer," all from the same location at 117 West Walnut Street, Watseka, Illinois. The proceeds of the loan, which is evidenced by Plaintiff's Promissory Note were used by the corporation in the operation of those businesses.

5. As security for the payment obligation under Plaintiff's Promissory Note, the Debtor and the corporation granted Plaintiff a security interest in all of the accounts receivable of the businesses which the corporation operated.

6. In November 2000, the Debtor/Defendant represented to the Plaintiff that the total balance of the accounts receivable of the businesses which the corporation operated was approximately $90,000. This amount far exceeded the unpaid balance of the indebtedness upon Plaintiff's Promissory Note at that time.

7. In July 2001, at a time when the payment obligation upon Plaintiff's Promissory Note was delinquent, Plaintiff made a demand for payment upon that note and requested current information about the accounts receivable of the businesses which the corporation operated.

8. In August 2001, after the Debtor and the corporation failed to respond to the Plaintiff's payment demand and request for information about accounts receivable, Plaintiff filed suit in Case No.2001–LM–94, against the Debtor and the corporation in the Circuit Court of Iroquois County, Illinois. Between July 2001, when the Plaintiff made the foregoing payment demand and request for information about accounts receivable, and February 14, 2002, when the Debtor filed for relief under Chapter 7 of the Bankruptcy Code, the Debtor and the corporation continued to conduct business and failed to make any payment upon Plaintiff's indebtedness. Further, the Debtor/Defendant failed to supply the Plaintiff with any information concerning the accounts receivable serving as security for the Plaintiff's indebtedness.

9. Subsequent to the filing of Debtor's Chapter 7 bankruptcy proceeding, the Debtor furnished to Plaintiff a list of accounts receivable of "M. C. Office Products" as of February 26, 2002, indicating a total balance of accounts receivable of approximately $7,000.

10. At the Meeting of Creditors in the Debtor's Chapter 7 bankruptcy proceeding, Debtor testified that, until the time of filing of his Chapter 7 bankruptcy, the accounts receivable that secured the payment obligation upon Plaintiff's Note were collected by the Debtor and the corporation in the ordinary course of business operations, and that the proceeds from the collection of those accounts were spent for business purposes.

Given the facts which have been admitted by the Debtor in his Answer and the Debtor's testimony at the Meeting of Creditors in his Chapter 7 bankruptcy proceeding, the only allegations of the Complaint which need to be addressed by this Court concern whether the Debtor's con-

duct caused injury to the Plaintiff and whether Debtor's actions were done with actual intent to cause injury to the Plaintiff as required by 11 U.S.C. § 523(a)(6).

In order to prevail under § 523(a)(6), the Plaintiff must prove, by a preponderance of the evidence: (1) that the defendant caused an injury; (2) that the defendant's actions were willful; and (3) that the defendant's actions were malicious. *In re Bennett,* 293 B.R. 760 (Bankr. C.D.Ill.2003). In order for a defendant's actions to qualify as "willful" within the meaning of § 523(a)(6), plaintiff must show that the defendant actually intended to injure the plaintiff or that the defendant acted while knowing with substantial certainty that the plaintiff would be harmed by the defendant's act. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *In re Kidd,* 219 B.R. 278 (Bankr.D.Mont.1998); and *In re Cox,* 243 B.R. 713 (Bankr.N.D.Ill.2000). In order to prove malice, a creditor must show that the debtor's willful injurious conduct was undertaken without just cause or excuse. *In re Slosberg,* 225 B.R. 9 (Bankr. D.Me.1998); *In re Thirtyacre,* 36 F.3d 697 (7th Cir.1994).

In discussing the standard to be applied in cases involving conversion of collateral under § 523(a)(6), after *Geiger,* the Court in *In re Kidd, supra,* at 285, stated:

> [A] creditor, in order to prevail under § 523(a)(6), must demonstrate by a preponderance of the evidence, that the debtor desired to cause the injury complained of, or that the debtor believed that the consequences were substantially certain to result from the debtors (sic) acts. In other words, in the case of a conversion, a creditor must show that a debtor, when converting collateral, did so with the specific intent of depriving the creditor of its collateral or did so

knowing, with substantial certainty, that the creditor would be harmed by the conversion. This subjective test focuses on whether the injury was in fact anticipated by the debtor and thus insulates the innocent collateral conversions from non-dischargeability under § 523(a)(6).

The key in conversion cases is to analyze each set of circumstances on a case-by-case basis to determine whether the conversion is in the nature of an intentional tort or whether the conversion is the result of a negligent or reckless tort, but not willful and malicious. *In re Kidd, supra,* at 284.

A review of the facts in this case lead the Court to conclude that there is no question that the Plaintiff was injured by the Debtor/Defendant's conduct. It is clear that there was a valid Promissory Note between the Plaintiff and the Debtor/Defendant, and that that Note was secured in accounts receivable in the businesses operated by the Debtor and the Debtor's corporation. The Promissory Note went into default upon the Debtor's failure to make payments, and the indebtedness of the Plaintiff was reduced to a judgment in the State Court. This being the case, the Court must turn to the questions of whether the conduct of the Debtor/Defendant was willful and malicious as those terms are defined in 11 U.S.C. § 523(a)(6), and the case law interpreting that section.

In considering the issues of willful and malicious conduct, as defined in the case law cited above, the Court must note, at the outset, that it found that the Debtor/Defendant was not a credible witness. In viewing the Debtor's demeanor, and considering his testimony and how it related to other testimony and documentary evidence in the case, the Court finds that the Debtor's testimony was evasive and

lacking in substance. It took many months for the Plaintiff to gather discovery in this matter with the Debtor providing very few records of his corporate and personal business operations. In response to a Motion to Compel Discovery filed by the Plaintiff, the Debtor indicated that most, if not all, of the records of the businesses he operated, personally and through his corporation, had either been lost or destroyed. The Plaintiff presented credible testimony that the records which were claimed to have been lost or destroyed existed in large part on a computer disk, which the Plaintiff was able to obtain from a third party. This fact, and Debtor's inability to otherwise reconstruct a record of his business operations, completely erodes the Debtor's credibility. To the contrary, the witnesses who testified on behalf of the Plaintiff were credible, and the Debtor/Defendant offered no compelling evidence to impeach their testimony.

■ The credible evidence in the case establishes by a preponderance of that evidence that the Debtor/Defendant well knew that the Plaintiff had a security interest in the accounts receivable of all of his businesses. The Debtor/Defendant also knew that, as he collected those accounts receivable and, in turn, spent them in any manner, he was dissipating the Plaintiff's collateral. There was uncontroverted evidence that the Debtor/Defendant did, in fact, transfer certain leases in computer equipment to his parents, who subsequently operated a similar business to that of the Debtor/Defendant. The Court is convinced that the Debtor knew that the rent receipts from these leases constituted accounts receivable which were collateral for his debt to the Plaintiff. In all, the evidence has established that the Debtor, in converting the Plaintiff's collateral, did so with the specific intent of depriving the Plaintiff of that collateral. At the very least, the Debtor converted the collateral knowing, with a substantial certainty, that the Plaintiff would be harmed by the conversion. This being the case, the Plaintiff has established that the Debtor/Defendant's conduct was willful.

■ As for the question of whether the Debtor/Defendant's conduct was malicious, the Court finds that the Debtor engaged in a wrongful act which was done consciously and knowingly and in the absence of just cause or excuse. The Debtor continued to operate failing businesses long after the Plaintiff's demand for payment, using the cash proceeds derived from Plaintiff's collateral. The Debtor/Defendant's testimony that the proceeds were spent entirely to continue to operate his businesses was not credible and irrelevant even if true. The evidence established that many of the accounts receivable of Debtor's businesses were paid in cash, and neither the records nor evidence offered by the Debtor/Defendant account for all of the paid accounts receivable.

In conclusion, the Court finds that the Plaintiff has met his burden of proof by a preponderance of the evidence to establish all of the elements required under 11 U.S.C. § 523(a)(6). As such, the Court finds that the debt reduced to judgment in the Circuit Court of Iroquois County in the amount of $40,031.18, is non-dischargeable in Debtor/Defendant's Chapter 7 bankruptcy proceeding. The Court further finds that the debt should bear interest at the rate of 9% per annum from August 23, 2001, until fully paid.