**In re Robert C. DOWDELL and Diane J. Dowdell, Debtor(s),**

**Major Sports Fantasy, Ltd, Plaintiff,**

v.

**Robert C. Dowdell and Diane J. Dowdell, Defendant.**

**Bankruptcy No. 9:08–bk–03035–ALP. Adversary No. 9:08–ap–00276–ALP.**

United States Bankruptcy Court, M.D. Florida, Ft. Myers Division.

April 24, 2009.

Douglas B. Szabo, Luis E. Rivera, II, Henderson, Franklin, Starnes & Holt PA, Fort Myers, FL, for Plaintiff.

Valencia D. Richards–Hayes, Cape Coral, FL, for Defendant.

### ORDER ON MOTION FOR SUMMARY JUDGMENT

ALEXANDER L. PASKAY, Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 liquidation case is a Motion for Summary Judgment filed by Major Sports Fantasy, Ltd (the Plaintiff and/or Major Sports, Ltd) in the above-captioned adversary proceeding commenced by the Plaintiff against Robert C. Dowdell and Diane J. Dowdell (the Debtors). The Plaintiff has brought this adversary proceeding seeking a determination that a debt it contends is owed to it by the Debtors is nondischargeable pursuant to Sections 523(a)(4) and 523(a)(6) of the Bankruptcy Code.

In its Complaint, the Plaintiff sets forth two claims in two separate counts. The claim in Count I is based on the allegations of Major Sports, Ltd that the Debtors breached their fiduciary duty to the Plaintiff and committed fraud or defalcation while acting in their fiduciary capacity by competing against the Plaintiff and by causing confusion as to the ownership, management and viability of Plaintiff's fantasy baseball camps and organization in violation of Section 523(a)(4) of the Bankruptcy Code.

In Count II, the Plaintiff alleges that the Debtors' violation of the terms of their Non–Competition Agreement and violation of the terms and spirit of the documents entered into for the sale of the businesses to the Plaintiff was willful and malicious. Thus, based on the acts of the Debtors, it is the Plaintiff's contention that, all or a substantial portion of the debt owed to the Plaintiff is non-dischargeable as one arising from willful and malicious injury by Debtors to Plaintiff pursuant to Section 523(a)(6) of the Bankruptcy Code.

In due course the Debtors filed their Answer to the Complaint. In their Answer, the Debtors admitted that they entered into an agreement for the sale of all assets of the corporation they controlled to Major Sports, Ltd but denied that they were admitted as a limited partner. The Debtors also admit that they executed a Non–Competition Agreement with the Plaintiff. The Debtors admitted that they were sued in the 181st District Court, in and for Potter County, Texas, (the Texas State Court) by Major Sports, Ltd. In that action, Major Sports, Ltd filed a Motion for Temporary Injunction, and after a hearing the Debtors attended in opposition to the Motion, the Texas State Court granted the Motion and enjoined the Debtors from violating the Non–Competition Agreement they had signed when they sold the assets described above to Major Sports, Ltd. Major Sports, Ltd also filed several motions seeking the enforcement of the Temporary Injunction issued by the Texas State Court.

In its Motion for Summary Judgment, Major Sports, Ltd contends that, based on the record, there are no genuine issues of material fact. It further contends that the facts relevant to the claim of nondischargeability are without dispute and, applying the legal principles which govern the exceptions to general discharge pursuant to Section 523(a)(6) of the Bankruptcy Code, it is entitled to Summary Judgment as a matter of law.

In support of its contentions, the Plaintiff relies on the exhibits attached to its Complaint, including, but not limited to, the Findings of Fact and Conclusions of Law entered in the 181st District Court in and for Potter County, Texas (District Court), on September 27, 2002, in the case of *Major Sports Fantasy, LTD. v. Robert C. Dowdell, Jr., Diane Marshall Dowdell, World Series of Fantasy Baseball, Inc. and Major Sports Fantasies, Inc. a/k/a Sports Fantasies, Inc.,* (Defendants) Cause. No.: 87,652–B (Plaintiff's Exhibit B). They also rely on a Judgment entered on the same date for the Plaintiff and against the Defendants (Plaintiff's Exhibit C). In addition, the Plaintiff relies on the Order entered on October 5, 2000, by the District Court granting the Plaintiff's Temporary Injunction (Plaintiff's Exhibit A); an Agreed Judgment entered by the District Court on March 19, 2003 (Plaintiff's Exhibit D), and the Affidavits of John "Jack" Sharitz and Jay Deet Peter.

On December 17, 2008, the Debtors filed their Response/Objection to the Motion for Summary Judgment (Response) (Doc. No. 13). In Paragraph 3 of the Response, the Debtors' contend that there are genuine issues of material fact; therefore, the Motion for Summary Judgment should be denied. In Paragraph 4 of the Response, the Debtors deny any violation of the Non–Compete Agreement and that they were denied due process of law in the Texas Proceedings. In support of their contentions, the Debtors' filed Affidavits of Robert Dowdell and Diane Dowdell. In addition, the Debtors also presented legal argument in support of their defense and that they were not accorded due process because they were not properly noticed of the trial date in Texas.

## UNDISPUTED FACTS

The record reveals the following facts which are part of the record, are virtually without dispute, and can be summarized as follows. On February 24, 2000, the Plaintiff entered into various agreements to transfer assets of World Series of Fantasy Baseball, Inc. (World Series, Inc.) and Major Sports Fantasy, Inc. a/k/a Major Sports Fantasies, Inc. (Major Sports, Inc.). At the time relevant, Major Sports, Inc. and World Series (the Entities) were owned by the Debtors.

Upon execution of the agreements, the Plaintiff purchased the assets of the Entities and, based on the same, the Entities were dissolved. The assets of the Entities were transferred to the Plaintiff with the intent the Plaintiff would continue to conduct the business of the Entities as previously conducted prior to its acquisition by the Plaintiff. The Entities were formed to conduct camps and/or instructional seminars at the facilities which professional baseball players, active and retired, would provide individuals with entertainment and instruction in the game of baseball. These agreements included an Agreement for Asset Transfer in which World Series, Inc. and Sports Fantasy, Inc., transferred to Major Sports, Ltd all real and personal property owned by those entities relating to their business of conducting baseball camps or instructional baseball seminars. The assets expressly transferred to Plaintiff included all inventory, accounts receivables, contract rights, agreements, good will, going concern value, advertising materials, logos, trade names, trade marks, service marks, internet web sites, and any and all rights in or to the use of the name "Major Sports Fantasy," "The Ultimate Fan," "World Series of Fantasy Baseball," and "When It Was A Game." Additionally, as part of the Agreement for Asset Transfer, Debtors agreed to execute a Non–Competition Agreement prohibiting direct or indirect competitive activities with purchaser by seller for a period of three (3) years following the closing date.

It is the contention of the Plaintiff, that in order to consummate the transaction, the Debtor, Robert C. Dowell (Dowell), was admitted as a limited partner for the Plaintiff. In addition to the foregoing, on February 24, 2000, the Debtors entered into a Non–Competition Agreement in which the Debtors, individually, would not compete with the Plaintiff for three (3) years from the date of the execution of the agreement.

Notwithstanding the spirit and intent of the parties, and Debtors' contractual obligations to Major Sports, Ltd by June 2000, Debtors began conducting fantasy baseball camps and instructional baseball seminars, and the promotion and advertising of the same. Debtors also failed to fully transfer all assets specifically identified in the Agreement for Transfer of Assets. Furthermore, Debtors engaged in active competition with Major Sports, Ltd in the conducting of fantasy baseball camps and instructional seminars, in direct violation of the Non–Competition Agreements.

In response, on or about June 20, 2000, Major Sports, Ltd instituted a lawsuit against Debtors in the Texas State Court seeking injunctive relief and damages against Debtors as a result of their willful breach of the Non–Competition Agreement. The Debtors appeared and actively participated in the Texas State Court proceeding through counsel, denying the allegations of Major Sports Ltd's complaint and filing a counterclaim for monies allegedly owed to the Debtors. However, in the Texas State Court proceeding, Dowdell admitted "he [was] currently violating the Covenant not to compete and plan[ed] to violate the covenant in the future," *Major Sports Fantasy, Ltd. v. Dowdell, et al,*

Cause No. 87,652–B (Oct. 5, 2000), and, on October 5, 2000, the presiding judge in the Texas State Court case entered an Order granting a temporary injunction against Debtors (the "Temporary Injunction"). The Order enjoined the Debtors and commanded the Debtors to cease, desist and refrain from the following conduct:

1. ... engaging in, conducting, advertising for, referring potential customers ("campers") to, soliciting active and/or retired professional baseball players to participate in, the business of conducting baseball camps, fantasy camps, or instructional seminars in which active and retired professional baseball players provide individuals or groups with entertainment and instruction in the game of baseball.

2. ... making use of, sharing or selling Plaintiff's customer lists and/or information pertaining to potential customers.

3. ... calling on, soliciting, selling to, servicing, or otherwise doing business with, personally or through agents, servants, or employees, any customers or former customers of Plaintiff, World Series of Fantasy Baseball, Inc., and/or Major Sports Fantasies, a/k/a Sports Fantasies, Inc.

*Major Sports Fantasy, Ltd. v. Dowdell, et al,* Cause No. 87,652–B (Oct. 5, 2000).

Notwithstanding the entry of the Temporary Injunction, and the personal service thereof upon the Debtors, the Debtors continued to willfully violate the Non–Competition Agreement and the Temporary Injunction by engaging in the following acts:

Between October 13th and 15th, 2000, contacting Howard Camerik, a registered camper from Debtors' competing camp in January 2001, at Dodgertown, in Vero Beach, Florida, to solicit the balance of his camp fees;

Contacting John "Jack" Sharitz to participate in his camp at Dodgertown, in Vero Beach, Florida, in January, 2001; On or about November 6, 2000, making several attempts to contact John "Jack" Sharitz about participating in his camp at Dodgertown, in Vero Beach, Florida, in January, 2001

Communicating with John "Jack" Sharitz twice on the morning of November 7, 2000 regarding his participation in Dowdell's "diamond dreams" camp sponsored by Dowdell's companies, Sports Link and Even Management Services; Contacting Lowell Short, Joe Moscato, Roy Walters, Judy Harbaugh, and David Phillips concerning fantasy baseball camps; and Maintaining a web site, and posting on Dennis McCroskey's website, to solicit campers for fantasy baseball camps.

(See Affidavit of John "Jack" Sharitz and Affidavit of Jay Deet Prater)

Upon learning of Debtor's conduct in violation of the Non–Competition Agreement and the Temporary Injunction, on November 14, 2000, Major Sports, Ltd filed a verified Motion for Contempt for Violation of Temporary Injunction in the Texas State Court. On January 18, 2001, after notice to Debtors and their Texas counsel, an Order for Capias and Setting Bond was issued finding Debtors in contempt of court and directing the Clerk of the Texas State Court to issue a capias for Debtors' arrest (the "First Contempt Order"). Nonetheless, the entry of the Temporary Injunction or the First Contempt Order entered by the Texas State Court did not deter the Debtors from continuing to willfully violate the Non–Competition Agreement and the Temporary Injunction, and, on September 27, 2008, the matter was brought to trial before the Texas State Court. After considering the evidence presented by Major Sports, Ltd, on October 18, 2002, the Honorable Judge John

Board entered the following findings of facts:

3. Subsequent to the execution of the Noncompetition Agreement, Defendants engaged in actions in direct violation of the Noncompetition Agreement.

4. On October 5, 20002, this Court entered an Order Granting Temporary Injunction, after hearing arguments of counsel.

5. Subsequent to the granting of the Temporary Injunction, Defendants continued to engage in activities which violated the Noncompetition Agreement, as well as this Court's October 5, 2000 Order Granting Temporary Injunction.

6. Despite having a Show Cause Order issued and served, Defendants have failed to appear for any scheduled proceedings in this Court since September 29, 2000.

7. Defendants have continued to engage in activities in violation of the Noncompetition Agreement and this Court's Order Granting Temporary Injunction.

(*Major Sports Fantasy, Ltd. v. Dowdell, et al,* Cause No. 87,652–B) (October 18, 2002).

The Honorable Judge John Board also entered a Judgment permanently enjoining the Defendants for a period of three (3) years from competing with Major Sports, Ltd.

Finally, on March 17, 2003, the Texas State Court entered an agreed judgment awarding Major Sports, Ltd damages against Debtors in the sum of $241,000.00. (*Major Sports Fantasy, Ltd. v. Dowdell, et al,* Cause No. 87,652–B) (March 19, 2003). These damages represented damages Plaintiff sustained due to Debtors' willful violation of the terms of their Non–Competition Agreement and violation of the terms and spirit of the documents entered into for the sale of the businesses to Plaintiff.

Before considering the applicable legal principles which govern the issues raised by the Motion and Response, it is appropriate to note that the Debtors' basic contention is that they were not accorded due process in Texas. Although they do not articulate, they intimate, that this Court is not bound by the Texas judgment and should disregard the same.

### PRECLUSIVE EFFECT OF PREBANKRUPTCY LITIGATION

Initially under the Bankruptcy Code, courts did not give full faith and credit to a judgment entered by a state court against the debtor prior to the commencement of a case under Title 11 in favor of a creditor who sought a determination of nondischargeability of the judgment under any of the exceptions to discharge pursuant to Section 523(a) of the Bankruptcy Code. This was based on the ground that unless it was clear that the standard of proof applied by the state court was the same as one applied by the bankruptcy court in a dischargeability litigation, the bankruptcy court refused to give full faith and credit to the state court judgment.

The majority of bankruptcy courts applied the clear and convincing standard concerning the proof, and if the state court applied only the preponderance of evidence, the court refused to accept the binding effect of the state court judgment. Some courts even refused to apply collateral estoppel principles when the standard of proof used by the state court was identical on the grounds that the jurisdiction to rule on a claim of nondischargeability under certain exceptions set forth in Section 523(a)(2), (4) and (6) are exclusively within the power of the federal court. *Matter of McMillan,* 579 F.2d 289 (3d Cir.1978); *In re Houtman,* 568 F.2d 651 (9th Cir.1978).

The split was resolved in 1991 when the Supreme Court ruled in the case of *Grogan v. Garner,* 498 U.S. 279, 111

S.Ct. 654, 112 L.Ed.2d 755 (1991), that in a dischargeability litigation the proper standard is the preponderance of evidence, thus making it clear that collateral estoppel is applicable not only as to the liability established by the state court judgment, but also the character of the liability.

■ Under the doctrine of collateral estoppel the party seeking to rely on the doctrine must establish that: (1) the issue to be decided by the bankruptcy court is identical with the issue decided in the state court litigation, (2) the issue was actually litigated in the state court litigation, (3) the issue was determined by a valid and final judgment, (4) the determination of the issue in the state court litigation was essential to the judgment entered by the state court, and (5) the standard of proof in the state court litigation was at least as high as in the present litigation. *Spilman v. Harley*, 656 F.2d 224 (6th Cir.1981).

■ The question of the applicability of collateral estoppel still remains unresolved as to whether the state or the federal procedures should be applied when the rules applied by the state differ from the federal principles. In 1984, this question was answered by the Supreme Court in the case of *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). The Supreme Court held that the principles of "full faith and credit" pursuant to 28 U.S.C.A. Section 1738 requires "a federal court to give state court judgment the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered." *Id.* at 896. It is well established that in determining whether a state court judgment has a preclusive effect in an adversary proceeding in the bankruptcy court, the bankruptcy court shall apply the relevant state law which governs the collateral estoppel. *In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006).

Since the issue was fully litigated in Texas, this Court is duty bound to accept the binding effect of the final judgment entered in Texas against the Debtors. Thus, this leaves for consideration the record as it relates to the claim that it is within the exception of the discharge pursuant to 11 U.S.C. Section 523(a)(6).

### WILLFUL AND MALICIOUS IN JURY 11 U.S.C. § 523(a)(6)

■ 11 U.S.C. Section 523(a)(6) provides that a discharge does not discharge an individual from a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In addition, all liability, including punitive damages, associated with a nondischargeable debt for fraud has been held to be nondischargeable where the underlying debt is nondischargeable. *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). The term "willful" requires "a showing of an intentional or deliberate act, which is not done merely in reckless disregard of the rights of another." *In re Ikner*, 883 F.2d 986 (11th Cir.1989); *Chrysler Credit Corp. v. Rebhan*, 842 F.2d 1257, 1263 (11th Cir.1988). The Court must determine whether the debt arising from the judgment is one for a willful and malicious injury to the property of the plaintiff. If so, the debt may not be discharged in the debtors' Chapter 7 case. 11 U.S.C. § 523(a)(6). To prevail on a claim under Section 523(a)(6), it is not enough that an injury is caused by reckless or negligent conduct, even if the conduct was intentional, and therefore willful. For a debt to be nondischargeable under this subsection, the debt must derive from a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Rather, it must be shown that

the injury was both willful and malicious. *Id.* In Geiger, the Supreme Court applied the plain meaning approach in interpreting Section 523(a)(6).

■ Courts have interpreted the term "willful" to mean an action taken deliberately and intentionally. *In re Cohen,* 121 B.R. 267 (Bankr.E.D.N.Y.1990) (citations omitted); *In re Brown,* 331 B.R. 243, 250 (Bankr.W.D.Va.2005). The requirement that an injury be "willful" can be met by showing either that the Debtor had the subjective intent to inflict the injury or that the Debtor was aware that injury was substantially certain to 'result from his conduct. *Carrillo v. Su (In re Su),* 290 F.3d 1140, 1144 (9th Cir.2002)(cited by *Choice Hotels International, Inc. v. Wright (In re Wright),* 355 B.R. 192 (Bankr.C.D.Cal. 2006)).

■ An act is "malicious" within the meaning of the discharge exception for willful and malicious injury if it is one which is wrongful and without just cause or excessive, even in the absence of personal hatred, spite, or ill will. *In re Howard,* 261 B.R. 513, 520 (Bankr.M.D.Fla.2001)(quoting *Hope v. Walker (In re Walker),* 48 F.3d 1161, 1165 (11th Cir.1995)). It is not necessary to show that the debtor acted with any "ill will" toward the creditor to show malice for purposes of Section 523(a)(6). Instead, malice under Section 523(a)(6) may be implied or constructive, and may be inferred from the nature of the act. *Walker,* 48 F.3d at 1164. Implied or constructive malice may be established by showing that the Debtor deliberately and intentionally committed an act that he knew would necessarily injure a cognizable right of the creditor. *In re Jacobs,* 243 B.R. 836, 846 (Bankr.M.D.Fla.2000). The inquiry under this standard is whether the Debtor knew or should have known that his actions would cause harm to the Plaintiff. *See Cohen,* 121 B.R. at 271.

Courts have differed on the type of malice which must be shown under Section 523(a)(6) for the debt to be excepted from the discharge. One view adopted the specific malice test requiring a specific intent to injure the creditor. *In re Compos,* 768 F.2d 1155 (10th Cir.1985). Dissatisfaction with the specific malice test has led several courts to reject the specific standard malice test. Instead they have found malice if the wrongful act produced injury without just cause or excuse. In the case of *In re Walker,* 48 F.3d 1161 (11th Cir.1995), the court held that for the purposes of willful and malicious injury exception to the discharge requires that the debtor either intend the resulting injury or intentionally take action that is substantially certain to cause injury and the debtor must have intended, more than merely perform the act that results in injury. *Matter of Delaney,* 97 F.3d 800 (5th Cir.1996). The malice test is now the majority rule.

■ Applying the forgoing principles as applied by various other courts, this Court is satisfied that there are indeed no genuine issues of material fact. Major Sports, Ltd did establish the requisite degree of its burden of proof and, therefore, it is entitled to have the Motion for Summary Judgment granted. However, since the Judgment entered by the Texas State Court fails to specifically state what portion of the judgment entered in favor of Major Sports, Ltd and against the Debtors in the amount $241,000.00 is for damages due to the Debtors' breach of contract, which is dischargeable and/or attributable to the willful and malicious injury caused by the Debtors, this Court is satisfied that the resolution of this issue currently before the Court is partial. Therefore, the precise amount of damages shall be determined by either affidavit and/or by an agreement filed by the parties to this Court within thirty (30) days. If the par-

ties fail to file their appropriate affidavits or submit to this Court an agreement of the parties setting forth the division of the judgment issued by the Texas court within thirty (30) days from the entry of this Order, a final evidentiary hearing shall be conducted to determine the amount applicable to the Debtors' breach of contract and the amount attributable to willful and malicious injury caused by the Debtors.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment is granted in part, and the amount determined to be attributable to the willful malicious injury described shall be an exception from the provisions of the overall bankruptcy discharge. The amount ultimately found to be attributable to the breach of contract, shall be not within the exception and shall be discharged.

DONE AND ORDERED.