In re Anthony P. SMITH and Dorothy A. Smith, Debtors.

Austin Ritter, Plaintiff,

v.

Anthony P. Smith and Dorothy A. Smith, Defendants.

Bankruptcy No. 13–59021.
Adversary No. 13–05412.

United States Bankruptcy Court,
E.D. Michigan,
Southern Division.

Signed Sept. 18, 2014.

Gerald L. Decker, Clinton Township, MI, for Debtors.

*ORDER GRANTING IN PART DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT*

MARK A. RANDON, Bankruptcy Judge.

## I. INTRODUCTION

In hindsight, Austin Ritter's decision to invest $50,000.00 in Anthony and Dorothy Smith's ("Defendants") commercial cleaning company was a bad one: less than one year later, he sold his interest for just $5,000.00. Ritter sued Defendants in Oakland County Circuit Court for misrepresentation and silent fraud, negligent and innocent misrepresentation, breach of contract, and minority shareholder oppression to recover his losses. He alleges that Defendants misrepresented information about the company's financial health, and he relied on that information in deciding to invest.

Several months after Ritter sued, Defendants filed a Chapter 13 bankruptcy petition. Ritter filed a proof of claim for $45,000.00 and initiated this adversary proceeding, alleging the debt is non-dischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

Defendants' motion for summary judgment, and Ritter's cross motion for partial summary judgment are pending; the Court heard argument on September 15, 2014. Because there is a genuine issue of material fact as to whether the debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) only, Defendants' motion is GRANTED IN PART; Ritter's cross motion is DENIED.

## II. BACKGROUND

Mrs. Smith owned Building Service Specialists, Inc. ("BSSI"), a commercial cleaning business; Mr. Smith was the Vice President.[1] On November 17, 2011, Ritter signed a Letter of Intent to purchase 50% of BSSI's common stock. The negotiations were finalized on December 2, 2011: Ritter and Mr. Smith signed an Agreement for the Purchase and Sale of Stock. Ritter paid $50,000.00 for 965 shares.[2] At the time he sold his shares in October 2012 for $5,000.00, Ritter had received approximately $11,000.00 in dividend payments.

On April 18, 2013, BSSI sold its assets for $22,000.00 and dissolved. One month later, Ritter sued Defendants in Oakland County Circuit Court to recover his $45,000.00 loss; Defendants filed for personal bankruptcy protection five months later.[3] This adversary proceeding followed.

Ritter alleges that Defendants induced his investment through fraud, misrepresentations, or omissions about BSSI's operation and financial condition. In particular, Defendants misrepresented that BSSI had $100,000.00 in accounts receivable, no outstanding debts or liabilities, and would use Ritter's contribution for working capital and operations.[4] Ritter also says he was denied access to bank account information; and, Defendants prevented him from obtaining relevant financial information, failed to pay appropriate dividends, and made payments to themselves and

---

1. Mrs. Smith was named owner of BSSI so it could qualify as a minority-owned business; Mr. Smith actually managed the daily operations.

2. Ritter paid $20,000.00 in cash and Defendants forgave $30,000.00 of debt that BSSI owed Ritter's company.

3. BSSI filed a Chapter 7 bankruptcy petition on February 4, 2014 (Case Number 14–41533).

4. Ritter testified at his deposition that the $30,000.00 debt BSSI owed his company did not appear on the balance sheet as a liability.

family members for work they did not perform. According to Ritter, at the time of his investment, BSSI's actual value was far less than Defendants represented.

## III. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment must be granted "if the movant shows that there are no genuine issues as to any material fact in dispute and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a); *CareToLive v. Food & Drug Admin.*, 631 F.3d 336, 340 (6th Cir. 2011). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Pittman v. Cuyahoga County Dep't of Children Servs.*, 640 F.3d 716, 723 (6th Cir.2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court must draw all justifiable inferences in favor of the party opposing the motion. *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir.2011). However, the non-moving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R.Civ.P. 56(c)(1). A mere scintilla of evidence is insufficient; there must be evidence on which a jury could reasonably find for the non-movant. *Hirsch v. CSX Transp., Inc.*, 656 F.3d 359, 362 (6th Cir. 2011).

## IV. ANALYSIS

Not every bankruptcy debt is dischargeable: there are certain exceptions enumerated in 11 U.S.C. § 523. These exceptions are strictly construed in favor of debtors

(Defendants), and Ritter has the burden to prove every element by a preponderance of the evidence. *Armbrustmacher v. Redburn (In re Redburn)*, 202 B.R. 917, 923 (Bankr.W.D.Mich.1996).

Ritter alleges that Defendants' debt is non-dischargeable under four exceptions.

### A. Statements Respecting the Debtor's or an Insider's Financial Condition

■ 11 U.S.C. § 523(a)(2)(A) and 11 U.S.C. § 523(a)(2)(B) are mutually exclusive: "[a]ll statements regarding a debtor's financial condition, whether written or oral, are expressly excluded from subsection (A). Rather, such a creditor must proceed under subsection (B) and satisfy the requirement that the statement of financial condition be in writing." *Prim Capital Corp. v. May (In re May)*, 2007 WL 2052185, at *5 (6th Cir. BAP July 19, 2007) (internal citations omitted).

#### 1. 11 U.S.C. § 523(a)(2)(A)

11 U.S.C. § 523(a)(2)(A) excepts from discharge "debt[s] for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by[ ] false pretenses, a false representation, or actual fraud, *other than a statement respecting the debtor's or an insider's financial condition[.]* " (Emphasis added). According to the express language of this section, it only applies when the falsity or fraud *does not* involve a statement about the debtor's or insider's financial condition. *Field v. Mans*, 516 U.S. 59, 66, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995) ("[§ 523(a)(2)(A) ] applies expressly when the debt follows a transfer of value or extension of credit induced by falsity or fraud (not going to financial condition)").

During oral argument, the parties agreed that section 523(a)(2)(A) does not apply because the statements upon which

Ritter relied involved an insider's financial condition. 11 U.S.C. § 101(31)(A)(iv) ("The term 'insider' includes[ ] if the debtor is an individual[ ] [a] corporation of which the debtor is a director, officer, or person in control[.]'").

Defendants are entitled to summary judgment on Ritter's claim that the debt is nondischargeable under section 523(a)(2)(A).

### 2. 11 U.S.C. § 523(a)(2)(B)

■ Under section 523(a)(2)(B), Defendants are not discharged from:

any debt[ ] for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by[ ] use of a statement in writing[ ] that is materially false; respecting the debtor's or an insider's financial condition; on which the creditor to whom the debtor is liable for such money ... reasonably relied; and that the debtor caused to be made or published with intent to deceive[.]

#### a. Statement in Writing

The statements upon which Ritter allegedly relied were in writing. They consisted of three financial documents he reviewed before investing in BSSI: (1) a profit and loss statement from November 2010 to October 2011; (2) the balance sheet as of October 1, 2011; and, (3) an accounts receivable aging summary.

#### b. Materially False

At his deposition, Ritter testified that: the profit and loss statement was inaccurate; and, the balance sheet and aging summary falsely stated that BSSI had more than $90,000.00 in accounts receivable.

■ "A [financial] statement is materially false if the information offers a substantially untruthful picture of the financial condition of the debtor that affects the creditor's decision to extend credit."

*Flagstar Bank, FSB v. Stricker (In re Stricker)*, 414 B.R. 175, 181–82 (Bankr. W.D.Mich.2009) (citation omitted). According to Ritter, the accounts receivable dropped precipitously from more than $90,000.00 in November 2011 to negative ten cents by May 2012. Ritter says this drop could not have been due to BSSI collecting on the outstanding receivables because it continued to have cash flow problems. Further, Mr. Smith testified at his deposition that the aging summary was inaccurate when he closed on the deal with Ritter, and Defendants concede that an "issue[ ] of fact exist[s] as to the falsity of the documents [and] whether the alleged falsity is material" (Dkt. No. 38; Def. Brief at p. 11).

Based on the totality of the circumstances, the Court finds a trier of fact could determine that the financial documents were materially false when Ritter reviewed them.

#### c. Respecting the Debtor's or Insider's Financial Condition

■ "Financial condition" is not defined in the Bankruptcy Code, and the circuits are split as to how it should be defined:

The "broad interpretation" includes any communication that has a bearing on the debtor's [or an insider's] financial condition. In other words, any communication addressing the status of a single asset or liability qualifies. The "strict interpretation," on the other hand limits statements "respecting the debtor's [or an insider's] financial condition" to communications that purport to state the debtor's [or an insider's] overall net worth, overall financial health, or equation of assets and liabilities.

*In re May*, 2007 WL 2052185, at *6 (internal citations omitted) (adopting the strict interpretation). Because the profit and loss statement, balance sheet, and accounts receivable aging summary relate to BSSI's

overall financial condition—as opposed to a single asset—even under the strict interpretation, these documents qualify as statements respecting financial condition. *See Investors Credit Corp. v. Batie (In re Batie)*, 995 F.2d 85, 89–90 (6th Cir.1993) (implying that statements showing net worth are statements respecting an insider's financial condition); *Bank Iowa–West Des Moines v. Torres (In re Torres)*, 457 B.R. 13, 19 (Bankr.S.D.Iowa 2011) (accounts receivable report, profit and loss statement, and balance sheet were written statements concerning the debtor's or an insider's financial condition).

### d. Reasonable Reliance

■ Reasonable reliance is a factual determination to be made by a trier of fact based on the totality of the circumstances. *Bank One, Lexington, N.A. v. Woolum (In re Woolum)*, 979 F.2d 71, 75 (6th Cir.1992). And, Defendants concede that an "issue[ ] of fact exist[s] as to whether the reliance was reasonably justified" (Dkt. No. 38; Def. Brief at p. 11).

### e. Publication of the Documents with the Intent to Deceive

■ The intent to deceive element does not require a subjective intent to have another person rely on false financial documents. Rather, this element is satisfied if "a debtor is reckless when submitting financial statements that he knows are not true." *In re Batie*, 995 F.2d at 90.

Ritter and Mr. Smith disagree as to how Ritter received the financial documents used in connection with his investment decision: Mr. Smith says he did not directly provide them to Ritter; they were created for Ritter's agent, Craig Vanderburg, to obtain a line of credit for BSSI. Ritter contends he received the financial documents directly from Mr. Smith.

Mr. Smith testified that the financial documents were accurate when he provided them to Vanderburg. However, the deposition testimony also reveals that Mr. Smith knew: (1) the financial documents were inaccurate when he was negotiating the investment deal with Ritter; (2) Vanderburg worked with Ritter; and, (3) Vanderburg was not restricted from sharing the financial documents with anyone. Mr. Smith also believed "it was the right thing" for Vanderburg to provide the financial documents to Ritter (Dkt. No. 42; Ex. C at p. 10 (CM/ECF)), and Defendants concede that "issues of fact exist as to how and why the documents were delivered to [Ritter] [and] whether intent to deceive existed" (Dkt. No. 38; Def. Brief at p. 11).

Based on the totality of the circumstances, the Court finds a trier of fact could determine that the financial documents were published with the intent to deceive.

### B. 11 U.S.C. § 523(a)(4)

11 U.S.C. § 523(a)(4) provides an exception to discharge for "fraud or defalcation while acting in a fiduciary capacity[.]" Ritter says the debt is non-dischargeable because Defendants engaged in shareholder oppression—using corporate money to pay Mrs. Smith and her son for work they did not perform. *See Bd. of Trustees of the Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 639 (6th Cir.2007) ("a defalcation encompasses not only embezzlement and misappropriation by a fiduciary, but also the failure to properly account for such funds") (quotations omitted).

■ "With respect to defalcation while acting in a fiduciary capacity, the Sixth Circuit has provided that the preponderance of the evidence must establish: (1) a pre-existing fiduciary relationship, (2) a breach of that relationship, and (3) resulting loss." *Cameron, Jr. v. Thomas (In re Thomas)*, 2014 WL 509327, at *6 (Bankr. E.D.Tenn. Feb. 7, 2014) (quoting *Patel v.*

*Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir.2009) (internal quotations omitted)). "Fiduciary capacity"—for section 523(a)(4) purposes— is narrowly defined: "[i]t does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. [T]he defalcation provision applies to only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Bucci*, 493 F.3d at 639. To establish an express trust, Ritter must prove: (1) an intent to create a trust; (2) a trustee; (3) a trust res; and, (4) a definite beneficiary. *Patel v. Shamrock Floorcovering Services, Inc. (In re Patel)*, 565 F.3d 963, 968 (6th Cir.2009).

 Ritter conceded at oral argument that no express trust exists. He instead relies on *In re Rosenbaum*, No. 08–43029, 2010 WL 1856344 (E.D.Tex. May 7, 2010), in which the court held a debt nondischargeable under section 523(a)(4) because the debtors violated their fiduciary duties by using corporate funds as "their personal piggy bank" (Dkt. No. 42; Ex. G at p. 11 (CM/ECF)). But, in Michigan, the fact that officers and directors have fiduciary duties does not equate to a finding that they are trustees:

> Michigan law imposes a fiduciary duty of good faith upon corporate officers and directors. However, Michigan law does not mandate that officers and directors are trustees with respect to corporate assets. Consequently, the Debtor's actions were not undertaken while he was acting in a "fiduciary capacity" for purposes of 523(a)(4). The Debtor prevails under this subsection to the extent it relates to "defalcation while acting in a fiduciary capacity."

*Digital Commerce, Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 825 (Bankr. W.D.Mich.2004). As such, Defendants are entitled to summary judgment on Ritter's claim that the debt is non-dischargeable under section 523(a)(4).

### C. 11 U.S.C. § 523(a)(6)

 11 U.S.C. § 523(a)(6) provides that debts for "willful and malicious injury by the debtor to another entity" are non-dischargeable. This section only applies to acts done with actual intent to cause injury. *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *Awad v. Sakalla (In re Sakalla)*, 2010 WL 711115, at *2 (Bankr.E.D.Tenn. Feb. 24, 2010) (plaintiff has to prove a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury").

 There is no evidence that Defendants sought Ritter's investment with the intent that he would lose a substantial part of it. As such, Defendants are entitled to summary judgment on Ritter's claim that the debt is non-dischargeable under section 523(a)(6).

### V. CONCLUSION

Because there is a genuine issue of material fact regarding whether Defendants' debt is non-dischargeable under 11 U.S.C. § 523(a)(2)(B) only, Defendants' motion is **GRANTED IN PART**; Ritter's cross motion is **DENIED**. This adversary proceeding will proceed to trial solely on whether Defendants' debt is non-dischargeable under section 523(a)(2)(B).

**IT IS ORDERED.**